YERKOVICH v AAA

Docket No. 198307. Submitted January 14, 1998, at Detroit. Decided July 31, 1998, at 9:30 A.M. Leave to appeal sought.

Mary J. Yerkovich, individually and as next friend of her minor daughter, Lisa Yerkovich, brought an action in the Macomb Circuit Court against AAA and Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Fund, seeking the payment of medical expenses for injuries suffered by Lisa in an automobile accident when the driver of the vehicle in which she was riding negligently collided with another vehicle. At the time of the accident, the plaintiff was a participant in the defendant fund, a self-funded employee welfare benefit plan created and administered pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.*, and had a no-fault insurance policy issued by defendant AAA. After the plaintiff executed a subrogation agreement and assignment required by the defendant fund, the fund paid $6,832 in medical expenses. AAA denied coverage on the basis of a coordination of benefits clause in its policy that allegedly made the defendant fund primarily responsible for the medical expenses. The plaintiff also filed a negligence action against the driver of the vehicle in which her daughter had been riding, and that action was settled for $20,000. The plaintiff and the defendant fund filed motions for summary disposition. The fund alleged that the plaintiff was required to reimburse the fund from the third-party tort recovery for the medical expenses it had paid. The plaintiff and the fund both alleged that if reimbursement were required, it would result in the plaintiff's paying her own medical expenses, contrary to the provisions of the no-fault act and, therefore, AAA should be responsible for the medical expenses. AAA alleged that the subrogation agreement did not support a right to reimbursement and limited reimbursement only to situations where the plaintiff recovered medical benefits from a third-party suit and that, because the no-fault act precludes such causes of action, the plaintiff was not required to reimburse the defendant fund. The court, Michael D. Schwartz, J., granted summary disposition in favor of the plaintiff and the defendant fund and ordered AAA to repay the plaintiff any sums she paid to reimburse the fund. AAA appealed.

The Court of Appeals *held*:

1. When an insured elects in a no-fault policy to coordinate personal protection insurance benefits with other health and accident coverage in return for a lower no-fault insurance premium rate, the health insurer becomes primarily responsible for medical expenses resulting from injuries sustained in automobile accidents, even when the health insurance policy contains a coordination of benefits clause. However, where the health insurance plan is established pursuant to the ERISA, an unambiguous coordination of benefits clause in the ERISA plan controls and the no-fault insurer is primary.

2. The coordination of benefits clause in defendant fund's plan does not make the plan secondary to other insurance.

3. The trial court properly found that the subrogation agreement and assignment that the plaintiff signed obligates the plaintiff to reimburse the defendant fund the medical expenses it paid. The agreement requires repayment to the fund any time the insured receives a judgment or settlement in a third-party suit, not just in situations where the insured recovers economic damages from a third party.

4. The trial court correctly held that AAA was responsible for the reimbursement.

5. The preemption clause of the ERISA, 29 USC 1144(a), provides that the ERISA supersedes state laws that relate to qualifying employee benefit plans. Pursuant to the "saving clause," 29 USC 1144(b)(2)(A), the ERISA does not preempt state laws that regulate insurance. However, the effect of the "deemer clause," 29 USC 1144(b)(2)(B), is that self-funded ERISA plans, as opposed to plans that are insured, are even exempt from state laws that purport to regulate insurance. If a state law at issue falls under the preemption clause it is not saved when the ERISA plan at issue is self-funded.

6. To apply MCL 500.3116; MSA 24.13116 to this case and refuse to enforce the defendant fund's right to reimbursement would be to virtually eliminate the clause in the fund's policy that provides for the right to reimbursement and impose an administrative burden on the fund. Therefore, the ERISA preempts the application of § 3116 to this case. Because this case involves federal preemption, it is appropriate to allow the plaintiff to look to AAA to make her whole.

Affirmed.

MARKMAN, P.J., dissenting, stated that nothing within the principle of preemption, whereby the ERISA has preemptive effect on conflicting state law, requires a holding that the insureds must be allowed to exact from insurers coverage the insureds opted not to purchase. The analysis of the majority requires a no-fault insurer to

provide coverage exactly equivalent to what would have been provided had the insured not elected to coordinate employer-sponsored health and accident benefits with the insured's no-fault insurance and thereby reduce the amount of premium the insured paid the no-fault insurer. There is no reason why the insured must be absolved of the consequences of electing coordinated benefits for a reduced premium or why the no-fault insurer must pay no-fault benefits as though the insured had not elected such coordination. The court's order granting summary disposition in favor of the plaintiff should be reversed and the matter should be remanded for entry of an order granting summary disposition in favor of AAA.

1. INSURANCE — NO-FAULT INSURANCE — HEALTH INSURANCE — COORDINATION OF BENEFITS — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

No-fault insurers must offer their insureds the option of coordinating personal protection insurance benefits with other health and accident coverage and paying a correspondingly lowered premium rate; the health insurer becomes primarily responsible to pay medical expenses resulting from injuries sustained in automobile accidents when the insured elects this option, even when the health insurance policy also contains a coordination of benefits clause; however, where a health insurance plan is established pursuant to the federal Employee Retirement Income Security Act of 1974, an unambiguous coordination of benefits clause in the health insurance plan controls and the no-fault insurer is the primary insurer, even if its policy contains a coordination of benefits clause (29 USC 1001 *et seq.*; MCL 500.3109a; MSA 24.13109[1]).

2. INSURANCE — EMPLOYEE RETIREMENT INCOME SECURITY ACT — REIMBURSEMENT.

A reimbursement provision in a health insurance plan established pursuant to the federal Employee Retirement Income Security Act of 1974 that plainly states that the insured is required to repay the insurer for medical, hospital, or disability benefits the insurer pays to or on behalf of the insured as a result of an accident or injury involving a third party where the insured receives a judgment or settlement in a suit against the third party obligates the insured to reimburse the insurer when the conditions are met (29 USC 1001 *et seq.*).

3. CONSTITUTIONAL LAW — PREEMPTION — EMPLOYEE RETIREMENT INCOME SECURITY ACT — EMPLOYEE BENEFIT PLANS — INSURANCE.

The federal Employee Retirement Income Security Act of 1974 supersedes state laws that relate to qualifying employee benefit plans; state laws that force an ERISA plan administrator to modify a benefit plan in order to comply with the state laws violate the ERISA;

although the ERISA does not preempt state laws that regulate insurance, self-funded ERISA plans, as opposed to plans that are insured, are exempt from state laws that purport to regulate insurance (29 USC 1444[a],[b][2][A],[B]).

4. CONSTITUTIONAL LAW — INSURANCE — PREEMPTION — NO-FAULT — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

The federal Employee Retirement Income Security Act of 1974 preempts application of § 3116 of the no-fault act, which limits an insurer's ability to realize reimbursement from an insured's third-party tort claim, to prevent the enforcement of an insurer's right to reimbursement from the insured's recovery in a third-party action that arises from a policy issued by a self-funded employee welfare benefit fund established pursuant to the ERISA where application of § 3116 would virtually eliminate the reimbursement clause and impose an administrative burden on the ERISA insurer; where such preemption applies, a person with no-fault insurance may look to the no-fault insurer to prevent the insured from paying the insured's own medical benefits where the insured has reimbursed the health insurer from the insureds' recovery in a tort action against a third party for medical benefits received from the ERISA insurer as a result of injuries sustained in a vehicle accident with the third party (29 USC 1001 *et seq.*; MCL 500.3116; MSA 24.13116).

*Fraser & McHugh, P.C.* (by *Stuart A. Fraser*), for the plaintiff.

*Becker, Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *Charles Trickey, III*) (*John A. Lydick* of Counsel), for AAA.

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *I. Mark Steckloff* and *Patricia J. Fabrizio*), for Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Fund.

Before: MARKMAN, P.J., and McDONALD and CAVANAGH, JJ.

McDONALD, J. Defendant AAA appeals as of right from the trial court's order granting motions for sum-

mary disposition pursuant to MCR 2.116(C)(10) in favor of plaintiff and defendant Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Fund (fund). We affirm.

Plaintiff's minor daughter suffered injuries in an automobile accident when the driver of the vehicle in which she was riding negligently collided with another vehicle. At the time of the accident, plaintiff was a participant in the fund. Defendant fund is a self-funded employee welfare benefit plan created and administered pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.* Plaintiff also had a no-fault policy issued by defendant AAA at the time of the accident.

Plaintiff filed this action on behalf of her minor daughter against both defendants, seeking payment of medical expenses. The fund had initially denied coverage, claiming plaintiff had failed to execute a subrogation agreement as required by the policy's subrogation clause. However, plaintiff eventually executed the required "Subrogation Agreement and Assignment" and the fund paid $6,832 in medical expense benefits. AAA also denied coverage, claiming plaintiff's policy contained a coordination of benefits (COB) clause which made the fund primarily responsible for medical expenses from the accident. Plaintiff also filed a negligence claim against the driver of the vehicle in which her daughter was riding at the time of the accident, which was settled for $20,000.

Plaintiff and the fund each filed motions for summary disposition in the trial court, essentially advancing the same position. The fund argued that pursuant to the plan, plaintiff was required to reimburse the fund the $6,832 it had paid for medical expenses from

her third-party tort recovery. Plaintiff and the fund agreed that if such reimbursement were required, it would result in plaintiff's paying her own medical expenses, contrary to the provisions of the no-fault act. Plaintiff and the fund contended defendant AAA should be held responsible for the medical expenses. AAA countered that the language of the subrogation agreement between plaintiff and defendant fund did not support a right to reimbursement in this case. AAA argued the language of the agreement limited reimbursement to situations where plaintiff recovered medical benefits from a third-party suit. Because the no-fault act precludes such causes of action, AAA argued, plaintiff was not required to reimburse the fund. The trial court granted the motions for summary disposition and ordered AAA to repay plaintiff any sums she paid to reimburse the fund.

AAA argues the trial court erred in granting the summary disposition motions. When determining whether the trial court properly granted summary disposition pursuant to MCR 2.116(C)(10), we review the record de novo to determine whether the prevailing parties were entitled to the judgment as a matter of law. *Westfield Cos v Grand Valley Health Plan*, 224 Mich App 385, 387-388; 568 NW2d 854 (1997).

Initially, we comment on the effect of the COB clauses in this case. The parties do not dispute AAA's claim that plaintiff's no-fault policy is coordinated pursuant to MCL 500.3109a; MSA 24.13109(1). Section 3109a of the no-fault act requires insurers to offer insureds the option of coordinating their personal protection insurance benefits with their other health and accident coverage and paying a corre-

spondingly lowered premium rate.[1] *Westfield, supra* at 388. When the insured elects this option, the health insurer becomes primarily responsible to pay for medical expenses resulting from injuries sustained in automobile accidents, even when the health insurance policy also contains a COB clause. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc*, 424 Mich 537; 383 NW2d 590 (1986).[2] However, when the health insurance plan at issue is established pursuant to the ERISA, an unambiguous COB clause in the ERISA plan controls and the no-fault insurer is primary. *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 387; 505 NW2d 820 (1993).

In this case, neither plaintiff nor defendant fund argues the plan contained an unambiguous COB clause that rendered AAA primarily liable for the medical expenses. The plan does contain a "Coordination of Benefits" clause, but the clause does not appear to make the plan secondary to other insurance. Instead, the clause provides, in relevant part:

---

[1] Section 3109a provides:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

[2] *Federal Kemper* was overruled to the extent that it conflicted with the Court's decision in *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 387; 505 NW2d 820 (1993), but the Court emphasized that outside its narrow holding in *Frederick & Herrud,* health-care coverage remained primary over that in a no-fault policy. *Frederick & Herrud, supra* at 390.

(1) *Coordination of Benefits* means that if the *covered person,* i.e., employee or dependent, is covered under more than one *Plan,* the total amount payable under this *Plan,* when added to the amount or value of the benefits or services provided by all *Other Plans,* will not exceed the amount of the Allowed Expense which is incurred. In no event will the amount payable under this *Plan* be more than what would be paid if there were no *Other Plan. Coordination of Benefits* provisions will be applied on a *calendar year* basis. [Emphasis in original.]

Accordingly, this case is not controlled by *Frederick & Herrud.* If the outcome of this case depended on the COB clauses alone, it appears the fund would be the primary insurer and AAA would be the secondary insurer. *Allstate Ins Co v American Medical Security, Inc,* 975 F Supp 1005, 1008 (ED Mich, 1997).

However, the issue in this case is the effect of the "Subrogation Agreement and Assignment" plaintiff signed. The trial court found this agreement obligates plaintiff to repay the fund the $6,832 it paid in medical expenses. Defendant AAA argues the fund is not entitled to reimbursement under the agreement. We agree with the trial court's conclusion.

The "Subrogation Agreement and Assignment" provides, in relevant part:

I have made a claim to the fund for medical and/or hospital and/or disability benefits as the result of an accident or injury involving a third party who may be liable.

I agree, for myself and on behalf of my dependents, that if the plan advances benefits to or on behalf of me or my dependents *I will repay the plan in full any sums advanced to cover such expenses from any judgement [sic] or settlement I or my dependents receive.*

\*     \*     \*

I agree that the fund shall be subrogated in the amount of any sums paid by the fund to my and/or my dependents rights of recovery against the third party. *All such sums recovered, by suit, settlement, or otherwise, shall be paid over to the fund.* [Emphasis added.]

AAA argues the trial court did not interpret the language of the agreement because it erroneously assumed the plan's trustees had interpreted the language and erroneously concluded that it was required to defer to that interpretation of the agreement, unless it found the trustees had acted arbitrarily and capriciously. Assuming AAA is correct, we review the language of the agreement de novo. *Western & Southern Life Ins Co v Wall*, 903 F Supp 1155, 1159 (ED Mich, 1995).

The reimbursement provisions of the agreement do not limit the fund's right to repayment to situations where the insured recovers economic damages from a third party. Instead, the agreement plainly states the insured is required to repay the fund any time the insured receives a judgment or settlement in a third-party suit. It is undisputed that the plan advanced benefits to plaintiff's dependent when it paid her daughter's medical expenses. Moreover, it is undisputed that plaintiff received a settlement of $20,000 in her negligence case against the driver of the vehicle. Accordingly, the "Subrogation Agreement and Assignment" requires plaintiff to reimburse the fund.

AAA cites language of the agreement that is inapplicable to the instant case. In addition to the reimbursement provisions we have quoted, the agreement also contains the following provision:

I hereby assign to the fund all claims that I and/or my dependents may have against the third party for payment

and/or reimbursement of costs and expenses incurred by the fund for medical and/or hospital and/or disability benefits arising out of said accident and/or occurrence.

AAA argues this language precludes the fund's right of reimbursement in this case because under § 3135 of the no-fault act, MCL 500.3135; MSA 24.13135, plaintiff could not recover medical expenses from any third party. Even if AAA is correct in its interpretation of the agreement, the portion of the agreement it cites addresses assignment of claims. Defendant fund is not seeking an assignment of plaintiff's claim against the negligent driver. Instead, the issue in this case is whether plaintiff must reimburse the fund. Accordingly, the assignment provision does not govern whether the fund is entitled to be repaid for the medical expenses it paid in this case.

In light of our conclusion that the agreement requires plaintiff to reimburse the fund, we next determine whether the trial court correctly held defendant AAA responsible for the reimbursement. The trial court relied on *Sibley v DAIIE*, 431 Mich 164; 427 NW2d 528 (1988). In *Sibley*, the Michigan Supreme Court addressed the issue whether § 3109(1) of the no-fault act, MCL 500.3109(1); MSA 24.13109(1), applies to benefits the plaintiff had received but was later required to refund under the Federal Employees' Compensation Act (FECA), 5 USC 8101 *et seq.* Section 3109(1) provides for a mandatory setoff from no-fault benefits of benefits provided, or required to be provided, by state or federal law.[3] The

---

[3] Section 3109(1) provides:

     Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the

purpose of this setoff is to prevent a double recovery
by preventing the recovery of benefits that duplicate
benefits provided by the no-fault insurer. *Popma v
Auto Club Ins Ass'n*, 446 Mich 460, 476-477; 521
NW2d 831 (1994). In *Sibley*, the plaintiff was injured
in an automobile accident during the course of his
employment with the United States Post Office. The
plaintiff was required by federal law to repay
worker's compensation benefits he had received after
he settled his third-party tort claim against the other
driver. The Court held that these benefits were not
considered "benefits provided" under § 3109(1)
because they were not permanently provided to the
plaintiff. *Sibley, supra* at 169-170. The Court recog-
nized it could not preclude the federal government
from recovering from the plaintiff's tort recovery
because federal law provided for the reimbursement
and preempted state law. *Id.* at 170. However, the
Court held that it could require the no-fault insurer to
repay its insured, the plaintiff, the worker's compen-
sation benefits that federal law required him to repay
from his tort recovery. *Id.* The Court reasoned that
requiring the no-fault insurer to repay the benefits to
that extent prevented a worker injured in an automo-
bile accident from having to pay his own work-loss
and medical benefits. This result effectuated the
underlying policies of the no-fault act. *Id.* Accord-
ingly, the Court held the FECA benefits the plaintiff ini-
tially received should not be subtracted from the per-
sonal protection insurance benefits available to him
under no-fault law. *Id.* at 171.

personal protection insurance benefits otherwise payable for the
injury. [MCL 500.3109(1); MSA 24.13109(1).]

AAA urges us not to extend the *Sibley* approach to this case. However, this Court has already suggested that the approach would be appropriate. In *Great Lakes American Life Ins Co v Citizens Ins Co*, 191 Mich App 589; 479 NW2d 20 (1991), this Court held § 3116 of the no-fault act, MCL 500.3116; MSA 24.13116, precluded a health or disability insurer who had paid benefits in place of no-fault personal protection insurance benefits from enforcing its subrogation agreement with its insured. Section 3116 limits an insurer's ability to realize reimbursement from an insured's third-party tort claim to situations where the tort claim arises from an accident that occurred outside Michigan, or is against uninsured owners or operators, or is based on intentional torts.[4] *Id.* at 596.

---

[4] Section 3116 provides:

(1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury.

(2) A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits. A subtraction shall be made only to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculat-

In that case, the health insurer paid the defendant insured's medical expenses after he was injured in a vehicle accident.[5] Both the health insurance policy and the no-fault policy at issue contained COB clauses, but the health insurer paid the medical expenses pursuant to *Federal Kemper*. After the insured settled his third-party tort claim for noneconomic damages against the other driver, the health insurer sought to enforce its contractual right of subrogation against the insured's tort recovery. This Court held the benefits paid by the health insurer substituted for no-fault benefits and were subject to the limitations of § 3116; therefore, the health insurer could not enforce its contract. *Great Lakes, supra* at 599-600. However, this Court discussed the *Sibley* approach and commented that it was "limited to cases involving federal preemption" because it was contrary to the no-fault priority scheme of *Federal Kemper. Id.* at 599.

---

ing benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person.

(3) A personal protection insurer with a right of reimbursement under subsection (1), if suffering loss from inability to collect reimbursement out of a payment received by a claimant upon a tort claim is entitled to indemnity from a person who, with notice of the insurer's interest, made the payment to the claimant without making the claimant and the insurer joint payees as their interests may appear or without obtaining the insurer's consent to a different method of payment.

(4) A subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss as provided in section 3135(1) and (2)(b) or for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the amount recovered by the claimant from his or her insurer. [MCL 500.3116; MSA 24.13116.]

[5] In fact, the policy was issued to his wife, but the defendant was covered under the policy.

The "preemption clause" of the ERISA provides that the ERISA supersedes state laws that "relate to" qualifying employee benefit plans. 29 USC 1144(a). The basic thrust of the preemption clause is to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan (On Remand)*, 217 Mich App 687, 693; 552 NW2d 919 (1996), citing *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins Co*, 514 US 645, 655-656; 115 S Ct 1671; 131 L Ed 2d 695 (1995). State laws that force an ERISA plan administrator to modify a benefit plan in order to comply with the laws of a specific state would violate the ERISA. *Id.* Pursuant to the "savings clause," 29 USC 1144(b)(2)(A), the ERISA does not preempt state laws that regulate insurance. However, the effect of the "deemer clause," 29 USC 1144(b)(2)(B), is that self-funded ERISA plans, as opposed to plans that are insured, are even exempt from state laws that purport to regulate insurance. *FMC Corp v Holliday*, 498 US 52, 61; 111 S Ct 403; 112 L Ed 2d 356 (1990). Accordingly, if the state law at issue falls under the "preemption clause" it is not "saved" when the ERISA plan at issue is self-funded.

In *Frederick & Herrud, supra* at 387, the Court held that § 3109a of the no-fault act could not apply where an ERISA plan contained a clear COB clause, reasoning the statute had a direct effect on the administration of such plans because it would "virtually write a primacy of coverage clause into the plans." The Court concluded that such state regulation would impose administrative burdens on the plans that federal cases have historically forbidden. *Id.* If we were

to apply § 3116 to this case and refuse to enforce the fund's right to reimbursement, it would virtually eliminate the clause of the policy that provides for the right. Accordingly, we believe the ERISA preempts the application of § 3116 to this case just as it did in *Frederick & Herrud.* Because this case involves federal preemption, it is appropriate to use the approach set forth in *Sibley* and allow the plaintiff to look to her no-fault carrier to make her whole. *Great Lakes, supra* at 599. Thus, the trial court properly ordered AAA to repay plaintiff any sums she reimbursed the fund.

Finally, AAA argues the trial court erroneously relied on plaintiff's acquiescence that the fund was entitled to reimbursement. We need not address this argument. Even if we agreed with AAA, we would not reverse the order of the trial court in this case where it reached the right result possibly for the wrong reason. *Phinney v Perlmutter*, 222 Mich App 513, 532; 564 NW2d 532 (1997).

Affirmed.

CAVANAGH, J., concurred.

MARKMAN, P.J. (*dissenting*). Although the facts are accurately set forth in the majority opinion, the majority's extension of the logic of the cited cases effects a windfall recovery for the plaintiff and is, in my view, insupportable. I therefore respectfully dissent.

Section 3109a of the Insurance Code, MCL 500.3109a; MSA 24.13109(1), provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other

health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

Before the advent of statutory no-fault insurance in Michigan, persons injured in motor vehicle accidents bore the resulting financial burdens if negligent or contributorily negligent, or if no one else involved in the accident was negligent. By mandating first-party insurance without regard to fault, the no-fault system changed all of this, guaranteeing that injured motorists, passengers, and pedestrians alike will have their medical costs and some or all of their wage losses and incidental expenses covered by required insurance or through the assigned claims facility, MCL 500.3172 *et seq.*; MSA 24.13172 *et seq.*[1]

Within this scheme of mandatory first-party insurance, the Legislature, in order to help make the required insurance affordable, added § 3109a within two years of enacting the original no-fault act. This section requires no-fault insurers to offer their insureds the option of coordinated benefits at a reduced premium. *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), app dis 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979); *Smith v Physicians Health Plan, Inc*, 444 Mich 743; 514 NW2d 150 (1994). Fundamental to this statutory amendment is that insurers have no choice—they must offer such an option to their insureds. The

---

[1] Except for vehicle thieves and those motor vehicle owners who violate their legal duty to procure such insurance, MCL 500.3113(a) and (b); MSA 24.13113(a) and (b).

insureds then have the right to elect coordinated medical benefits in exchange for a reduced no-fault insurance premium, or to reject that opportunity for such savings and, in the event of subsequent injury, to recoup a double recovery that is not a "windfall."[2] *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993).

Perhaps the most fundamental rule of Michigan insurance jurisprudence is that an insurer can never be held liable for a risk it did not assume and for which it did not charge or receive any premium. *Ruddock v Detroit Life Ins Co*, 209 Mich 638, 653; 117 NW 242 (1920); *Lee v Evergreen Regency Coöperative*, 151 Mich App 281, 285-286; 390 NW2d 183 (1986); *South Macomb Disposal Authority v American Ins Co (On Remand)*, 225 Mich App 635, 695-696; 572 NW2d 686 (1997). Yet this rule has been effectively nullified in the context of the instant case by a focus on tensions between the language of benefit plans under the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.*, and § 3109a, because ERISA plans apparently have free reign under federal law to countercoordinate health and accident benefits with no-fault benefits so as to make the latter primary. That is undoubtedly the logical consequence of the ERISA's preemptive effect on state law by virtue of the Supremacy Clause, US Const, art VI, cl 2. *Auto-Club Ins Ass'n v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 387; 505 NW2d 820 (1993). But nothing within this principle, in my judgment, requires a holding that insureds must be allowed to

---

[2] Such double recovery would not be a "windfall," because the insured will have paid double premiums.

exact from insurers coverage the insureds opted not to purchase.

In this case, plaintiff pocketed the savings generated by electing to coordinate her employer-sponsored health and accident benefits with her no-fault insurance, thereby reducing her no-fault insurance premiums. Yet although she reduced her premiums in this way, she appears to have given up nothing in reality because the liability of the no-fault insurer is apparently unaffected by the reduced premiums under the analysis of the majority. The insurer here is held to have provided coverage exactly equivalent to what would have been appropriate had it not received a reduced premium.

There is, of course, a loser in this affair. Because insurance merely represents the pooling of risks, all others in Michigan who purchase no-fault insurance are apparently responsible for subsidizing persons like plaintiff, who elect a reduced premium—which the Legislature has mandated be charged by insurers—but who obtain the same level of no-fault coverage as those not paying a reduced premium. As with all such governmental subsidies, overall the net effect is that of a zero-sum game or—when administrative costs, including the attorney fees paid by insurers to defend cases such as the instant one are considered in the balance—a negative-sum game for the people of Michigan.

However, this windfall to persons in plaintiff's position will not likely continue indefinitely. By this decision, a reasonable insurer will be forced to demand copies of health and accident coverage policies whenever an insured elects coordination under § 3109a. The insurers will have to scrutinize such policies,

both to identify those insurers protected by the ERISA from becoming primary insurers except by consent and to undertake a parsing of their language for possible countercoordination clauses that will require a readjustment of the actuarial risk and thus of the premium. Principally lawyers, conversant with the jurisprudence in this area of insurance law, will be competent to perform this examination. As a result, administrative costs will increase substantially and insureds as a class will pay higher no-fault premiums so that a minority can enjoy a minimal premium reduction through exercise of the § 3109a election.

This anomaly arises only because plaintiff was injured through the negligence of another driver and to an extent in excess of the threshold for tort liability under § 3135 of the Insurance Code, MCL 500.3135; MSA 24.13135.[3] Plaintiff, by the majority's lights, thus properly avails herself of two state legislative dispensations, a reduced premium and residual tort liability, but finds herself free, ostensibly because of federal legislative action and misinterpretation of the decisions cited by the majority, of the concomitant quid pro quo of reduced benefits.[4]

---

[3] This anomaly is a function of the ERISA plan's limitation of countercoordination to the situation in which its insureds obtains third-party tort recoveries. Because the ERISA plan might equally for present purposes have utilized a broader countercoordination strategy, my concerns over the manner in which the state legislative goal of making no-fault insurance more affordable has been eroded are general rather than specific to this particular situation.

[4] While plaintiff here has not obtained a double recovery of medical benefits, she reduced her no-fault premium by electing coordination of benefits, and her employer likewise reduced its health and accident insurance costs by virtue of the reserved right of the ERISA plan to countercoordinate benefits, a savings that redounded to plaintiff's benefit, both directly or indirectly through some combination of higher wages and better employer-funded health and accident coverage.

The majority has erred, in my judgment, in overlooking a crucial fact. In *Sibley v DAIIE*, 431 Mich 164; 427 NW2d 528 (1988), the issue was whether benefits initially tendered to the insured under the Federal Employees' Compensation Act, 5 USC 8101 *et seq.*, but recouped by the federal government pursuant to its statutory right of subrogation, 5 USC 8132, from the insured's third-party tort claim, should nonetheless be treated as "[b]enefits provided or required to be provided under the laws of . . . the federal government" for purposes of MCL 500.3109(1); MSA 24.13109(1). The Supreme Court of Michigan answered that question in the negative, and correctly so, in my judgment. What distinguishes *Sibley* from the present case, however, is that, in *Sibley*, the insured did not arrange a lower premium on the basis of such federal benefits; rather, insureds generally receive the benefit of lower premiums because the no-fault statute requires that state and federal benefits of that type be deducted from no-fault benefits. Insurers thus calculate actuarially the extent to which the general population of insureds will be able to avail itself of such benefits, and premiums are determined accordingly, without regard to individual cases. Thus, in *Sibley*, the Court merely announced to the actuaries that they should consider only benefits to be paid and retained under such federal and state programs as being within the offset allowed.

Here, in contrast, the ERISA-plan benefits are not provided "under the laws of any state or the federal government," that is, from the public treasury, but rather by virtue of funding furnished by plaintiff's employer. To reduce its costs, the employer has established subrogation rights, but this has nothing to do

with defendant no-fault insurer, which was not informed by plaintiff of her election to sign the subrogation agreement before reducing plaintiff's no-fault premium pursuant to her § 3109a election. Rather, this is between plaintiff and the ERISA plan. Presumably, by the manner in which the ERISA plan subrogates itself to plaintiff's tort recovery, it reduces the cost of the plan to the employer, and thereby either allows the employer to afford the plan at all or encourages the employer to provide a better benefit package for its employees. Either way, that is a direct benefit to plaintiff, but the quid pro quo is that she must reimburse the ERISA plan where, as here, she obtains a tort recovery for the same injury. There is no reason why this must absolve plaintiff of the consequences of her election of coordinated benefits for a reduced premium or why the insurer must pay no-fault benefits as though plaintiff had not elected coordination.

This is not a dispute over priority as between the ERISA plan and the no-fault insurer; as has been acknowledged, in that situation the ERISA plan would prevail, assuming a suitable coordination of benefits clause in the plan's charter. *Frederick & Herrud,* *supra* at 387. Nor is this a case in which a non-ERISA health insurer seeks to enforce subrogation rights against a tort recovery; that is precluded by § 3116 of the Insurance Code, MCL 500.3116; MSA 24.13116. *Great Lakes American Life Ins Co v Citizens Ins Co,* 191 Mich App 589; 479 NW2d 20 (1991). This is the only holding in *Great Lakes*; there is nothing therein, even dictum, that addresses the present factual situation or suggests a resolution of the issue here presented. This is a suit by an insured who has invoked her statutory right to a reduced premium in

exchange for coordinated benefits and who opted to use as her primary medical insurance an ERISA plan that reserved and invoked subrogation rights against an eventual tort recovery. No one forced her to make that election, but now that it has come time to accept the consequences of that election, there is no reason in law or logic to relieve her of the concomitant burdens that attend the reduced premium benefits already enjoyed.

Therefore, defendant AAA is entitled to summary disposition. I would reverse summary disposition in favor of plaintiff and, pursuant to MCR 7.216(A)(7), remand with instructions to grant summary disposition in favor of AAA.