CNA INSURANCE COMPANY, as administrator of the Draw–Tite Employee Benefit Plan, Plaintiff/Counter–Defendant,

v.

ALLSTATE INSURANCE COMPANY, Defendant/Counter–Plaintiff.

Civil No. 98–40195.

United States District Court, E.D. Michigan, Southern Division.

Jan. 13, 1999.

Stanley Green, Keith R. McMurdy, Strachan, Green, Cleveland, OH, for plaintiff.

Meghan A. McGlynn, Garan, Lucow, Port Huron, MI, for defendant.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF/COUNTER–DEFENDANT CNA INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT/COUNTER–PLAINTIFF ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

GADOLA, District Judge.

Presently before the court are the parties' cross motions for summary judgment. On November 12, 1998, plaintiff/counter-defendant CNA Insurance Company (hereinafter "plaintiff CNA"), as administrator of the Draw–Tite Employee Benefit Plan, filed its motion for summary judgment. Defendant/counter-plaintiff Allstate Insurance (hereinafter "defendant Allstate") responded to CNA's motion on November 30, 1998. Also on November 12, 1998, Allstate filed its own motion for summary judgment. Plaintiff CNA responded to Allstate's motion on November 17, 1998, by filing a brief in opposition. The parties, a no-fault insurance carrier and an administrator of an ERISA benefit plan, contest their liability for injuries sustained by their mutual insured in a one-car automobile-accident which occurred on September 28, 1998. On January 6, 1999, oral argument was heard on the parties' cross motions for summary judgment.

For the reasons set forth below, the Court will grant plaintiff CNA's motion for summary judgment and deny defendant Allstate's motion for summary judgment.

**I. FACTUAL BACKGROUND**

The parties are in agreement as to the material facts. The parties' respective motions for summary judgment therefore only concern an unresolved question of contract interpretation. The facts set forth immediately below have been stipulated to by the parties in a submission entitled "Agreed Stipulations of Fact," filed on September 28, 1998. *See* Exh. A to Defendant's Brief in Support of Motion for Summary Judgment.

On September 6, 1996, Chelsea Schwalbe was riding as a passenger in a car driven by her father Darren Schwalbe. On that date,

Chelsea and Darren Schwalbe were in a one-car accident caused by the negligence of Darren Schwalbe. At the time of the accident, Chelsea Schwalbe was a five year-old girl, a resident of her father's house, and a dependent of her father.

At the time of the accident, Mr. Schwalbe was an employee of Draw–Tite, Inc. (Draw–Tite). Draw Tite provides major medical coverage to employees and their dependents through a self-funded employee benefit plan, which is qualified under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* The Draw–Tite Employee Benefit Plan is administered by CNA Insurance Company (CNA). The Plan came into existence on June 1, 1990. CNA became a health benefits and claims administrator for the Plan on January 1, 1993. The language of the plan in effect at the time of the accident became effective on January 1, 1993. Chelsea Schwalbe is a "covered person" as defined under the Draw–Tite Plan.

At the time of the accident, Darren Schwalbe also had a policy of personal protection insurance provided by a policy purchased from Allstate. This policy, No. 065–110701, was purchased on January 4, 1990, and was in effect continuously since that date, up until and including the date of loss on September 6, 1996. Chelsea Schwalbe was both a "resident relative" and an "injured person" as defined by the no-fault Allstate insurance policy. Chelsea was thus entitled to coverage pursuant to that policy when the accident occurred. The policy is an "excess" policy for purposes of payment of medical expenses associated with an automobile accident.

Both the Draw–Tite Plan and the Allstate policy contain coordination of benefit (COB) provisions. To date, the Draw–Tite Plan has paid accident-related medical expenses on behalf of Chelsea Schwalbe in the amount of $225,232.79. Allstate has paid in excess of $30,000 for accident-related expenses incurred by Chelsea Schwalbe.[1]

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. See *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.Proc. 56(e); *Gregg,* 801 F.2d at 861. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* [t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is

---

1. In plaintiff CNA's brief in support of its motion for summary judgment, however, plaintiffs provides a different amount. CNA contends that defendant Allstate has paid out $101,128.17 for accident-related expenses incurred by Chelsea Schwalbe.

merely colorable, or is not significantly probative, summary judgment may be granted. 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see *Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. DISCUSSION

■ The issue presented for consideration, in light of the existence of allegedly conflicting coordination of benefits provisions in the two insurance contracts before the Court, is which of the available coverages is the primary one. On one side of the dispute is the ERISA plan, the Draw–Tite Employee Benefit Plan, represented by plaintiff CNA. On the opposite side is the no-fault personal insurance policy of defendant/counter-plaintiff Allstate. As previously mentioned, there is full agreement between the parties that both plans were in force at the time of the accident. Furthermore, both parties agree that Chelsea Schwalbe was both a "resident relative" and an "injured person" as defined by the no-fault Allstate insurance policy, as well as a "covered person" as defined under the Draw–Tite Plan.

**A. An examination of the respective coordination of benefits (COB) provisions in the Draw–Tite Plan and in the Allstate policy to determine whether a direct conflict between the two coverages exists.**

The Draw–Tite Plan's coordination of benefits provision applies "when a Covered Person has medical or dental care coverage under more than one plan." *See* Exh. D to defendant's motion for summary judgment, p. 48. The term "plan" is then defined so as to include "[m]edical benefits coverage in group, or group-type, and individual automobile 'no-fault' and traditional automobile 'fault' type contracts." *Id.* Plaintiff argues that since the Allstate policy is a no-fault insurance policy, it qualifies as a "plan" for

purposes of applying the Draw–Tite coordination of benefits provision.

In response, however, defendant Allstate points out that the Draw–Tite Plan exempts from the definition of "plan," "benefits under a law or plan when, by law, its benefits are excess to those of any private insurance plan." Exh. D to Defendant's Brief in Support of Motion for Summary Judgment, p. 48. Defendant, in its own motion for summary judgment, relies heavily on this excepted definition. Defendant argues that the Allstate contract, although admittedly a no-fault insurance policy, falls within the excepted definition. *According to defendant*, Michigan law provides that a no-fault insurance policy will be considered "excess"—i.e., secondary—*to any other* privately sponsored insurance policy held simultaneously by the insured. To fully evaluate this assertion, this Court must enter into a discussion of Mich. Comp. Laws § 500.3109a.

Pursuant to Mich. Comp. Laws § 500.3109a, entitled "Deductibles and exclusions relating to other health and accident coverage,"

[a]n insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

M.C.L. § 500.3109a. This Section does *not*, by its own terms, mandate that a no-fault personal protection insurance policy is to be regarded as secondarily liable in the event of simultaneous coverage under a health insurance policy. Nevertheless, the Michigan Supreme Court so interpreted Section 500.3109a in *Federal Kemper Ins. Co. v. Health Ins. Admin., Inc.*, 424 Mich. 537, 383 N.W.2d 590 (1986). In that case, the court held that in the event a no-fault insurance policy and a health insurance policy contain coordination provisions which conflict, the health insurance policy is primarily liable for

the insured's medical expenses arising out of an automobile accident. *Id.* at 551, 383 N.W.2d 590.

In 1993, however, the Michigan Supreme Court expressly overruled its prior decision in *Federal Kemper.* *See Auto Club Ins. Ass'n v. Frederick & Herrud,* 443 Mich. 358, 505 N.W.2d 820 (1993), *cert. denied,* 510 U.S. 1194, 114 S.Ct. 1300, 127 L.Ed.2d 652 (1994). The *Frederick & Herrud* court reasoned as follows:

> [a]lthough the Michigan statute [M.C.L. § 500.3109a] purports to regulate insurance and not ERISA plans, we conclude that [the statute] has a direct effect on the administration of the plans in these cases because it would virtually write a primacy of coverage clause into the plans. This is the type of state regulation that would lead to administrative burdens that the historical progression of federal cases recounted earlier forbids. Moreover, and of equal importance, we are persuaded that the federal policy furthers the state interest of fostering the existence of health and welfare benefits plans for its citizens. Thus, the perceived conflict between state and federal policy is not as marked as plaintiff would have us believe. Earlier we noted that there is no law requiring the establishment or funding of ERISA health and welfare benefits plans. We are also unaware of any state law requiring similar protection. Therefore, there is a considerable state interest in facilitating the creation and voluntary funding of such plans, especially in cases in which there is no automobile no-fault or other insurance to provide benefits. For these reasons, we conclude that M.C.L. § 500.3109a; M.S.A. § 24.13109(1) does not reach an ERISA plan with a COB [contribution of benefits] clause where that clause is unambiguous.

*See Frederick & Herrud,* 443 Mich. at 388, 505 N.W.2d 820. In a recent Michigan Supreme Court decision, commenting upon *Frederick & Herrud,* the court reaffirmed that *"Federal Kemper* was overruled to the extent that it conflicted with the Court's decision in *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.* (After Remand) 443 Mich. 358, 387, 505 N.W.2d 820 (1993)." *Yerkovich*

*v. AAA,* 231 Mich.App. 54, 585 N.W.2d 318, 320 n. 2 (1998).

In light of the Michigan case law discussed above, it is not fair to say that Michigan law provides categorically, in all cases, that a no-fault insurance policy will be considered "excess"—i.e., secondary—to *any other* privately sponsored insurance policy held simultaneously by the insured. In point of law, the Michigan Supreme Court has carved out an exception for those privately sponsored policies created under federal law, i.e., pursuant to ERISA. Therefore, this Court finds that the Allstate policy *does fall* within the meaning of "plan," as that term is defined in the Draw–Tite contract. Given this determination, it now becomes necessary to address the respective COB provisions in each plan in order to ascertain whether a direct conflict truly exists.

The Allstate policy contains its own coordination of benefits provision, stating that

> [i]f Allowable Expenses are identified as excess on the declaration page, Allowable Expenses benefits will be reduced by any amount paid or payable under the provisions of any…individual, blanket or group accident disability or hospitalization insurance.

*See* Exh. C to Defendant's Brief in Support of Motion for Summary Judgment, p. 18. Therefore, as a so-called "excess policy," the Allstate contract seeks to place itself in a position of secondary liability in cases where simultaneous coverage exists under any "individual, blanket or group accident disability or hospitalization insurance." *See id.* In contrast, the Draw–Tite Plan's COB section provides that

> [w]hen there is a basis for a claim under this Plan and another Plan, This Plan is a *Secondary Plan* which has its benefits determined *after those* of the other plan, *unless:*
>
> 1. The other Plan has rules coordinating its benefits with those of This Plan, *and*
> 2. Both those rules and This Plan's rules, in subparagraph B below, require that This Plan's benefits be determined before those of the other plan.

*See* Exh. D to Defendant's Brief in Support of Motion for Summary Judgment, pp. 49–50 (emphases added). Because of the word "unless," and the two conjunctive qualifying clauses following that word, it is not immediately apparent whether the Draw–Tite Plan's COB provision is truly in conflict with the Allstate COB provision. This Court must therefore examine the two statements to determine whether in fact a conflict exists between the two policies.

If either of the two qualifying statements, quoted above, is false, then the default rule would apply, placing the Draw–Tite ERISA plan in direct conflict with Allstate's no-fault policy. It is clear that statement one has been satisfied: the other plan—i.e., the Allstate policy—does indeed contain a coordination of benefits provision. The second statement requires more in-depth analysis. As that statement provides, *both* the Allstate policy's rules and the Draw–Tite Plan must require that the Draw–Tite Plan's benefits be determined before those of the other plan. The discussion below will show that this second requirement is not satisfied, thus triggering the default rule of secondary liability with respect to the Draw–Tite Plan.

The Allstate plan does provide that the Draw–Tite Plan's benefits must be determined before those of Allstate's. The crucial issue is whether the Draw–Tite Plan itself requires the Plan to be primarily liable given the particular factual conditions found in the case at bar. The Draw–Tite Plan contains six order of benefits rules, concerning the following topics:

(1) Non-dependent/Dependent

(2) Dependent Child/Parents not Separated or Divorced

(3) Dependent Child/Separated or Divorced Parents

(4) Active/Inactive Employee

(5) Continuation Coverage; and

(6) Longer/Shorter Length of Coverage

*See* Exh. D to Defendant's Brief in Support of Motion for Summary Judgment, pp. 50–51. Out of these six rules, the Court need only consider the first rule, as that rule is determinative of the issue. Rule 1 provides, in pertinent part, that

[t]he benefits of the Plan which covers the person as an Insured Person (that is, other than as a Dependent) are determined before those of the Plan which covers the person as a Dependent. . . .

*See* Exh. D to Defendant's Brief in Support of Motion for Summary Judgment, p. 50. Chelsea Schwalbe is the daughter of Darren Schwalbe, the insured, and was 5 years old at the time of the accident. The Draw–Tite Plan defines "dependent" as, *inter alia,* "an unmarried child under 19 years of age." *See* Exh. D to Defendant's Brief in Support of Motion for Summary Judgment, p. 12. Therefore, she is considered a dependent under the Draw–Tite Plan. According to the terms of the Allstate policy, Chelsea is a "resident relative," as the parties have previously stipulated. Sections I and V of the Allstate Policy include the term "resident relative" within the definition of "insured person." *See* Plaintiff's Brief in Support of Motion for Summary Judgment, p. 8. Although, the term "dependent" is not specifically defined in the Allstate policy, it is apparent that Chelsea is considered an "insured person" for purposes of the Allstate policy. Accordingly, this Court finds that, as an insured person under the Allstate policy, the Draw–Tite's COB provision, Rule 1, would require the Allstate policy to be primarily liable for her medical expenses.

In light of this finding, the "unless" clause drops out and the default rule applies, to wit: "[w]hen there is a basis for a claim under [the Draw–Tite] Plan and another Plan, this Plan is a *Secondary Plan* which has its benefits determined *after those* of the other plan. . . ." Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment, p. 49. This explicit language serves to create a direct conflict between the two plans. On the one hand, Draw–Tite's COB provision seeks to hold Allstate primarily liable; on other hand, the no-fault insurance policy attempts to hold itself out as an "excess" policy, secondarily liable to the ERISA plan.

**B. Since a direct conflict does exist between the parties' respective contribution of benefits provisions, the question thus becomes which plan should prevail.**

Both parties agree that *Auto Owners Ins. Co. v. Thorn Apple Valley,* 31 F.3d 371 (6th

Cir.1994), provides the definitive rule with respect to determining disputes between self-funded ERISA benefit plans and no-fault carriers. In that case, the Sixth Circuit concluded that "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect." *Id.* at 374. However, the *Thorn Apple Valley* court warned that "this consideration does not necessarily mean that the ERISA plan must prevail." *Id.* Instead, the Court held that a conflict between two COB provisions should be resolved pursuant to federal common law:

> [s]ince the Supreme Court's landmark...decision [in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ], development of federal common law has been sharply curtailed. In some contexts, however, it remains a viable source of authority. On occasion, Congress explicitly directs the federal courts to develop a body of common law to fill in the interstices of a statutory scheme in order to ensure national uniformity of application. ERISA presents just such a situation, where federal common law is expected to develop and address rights and obligations arising under the Act. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *In re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986).

*Thorn Apple Valley,* 31 F.3d at 374–75 (footnote omitted). The Sixth Circuit further noted that the "underlying purpose of ERISA is to protect 'the interests of participants in employee benefit plans and their beneficia-

ries.'" *Id.* at 375 (quoting 29 U.S.C. § 1001(b)). In the Sixth Circuit's view, "this directive means that Congress sought to guard qualified benefit plans from claims...which have been *expressly disavowed* by the plans." *Id.*

Applying the considerations set forth in *Thorn Apple Valley,* this Court must first determine whether in fact the ERISA plan at issue contains such an "express disavowal." [2] An express disavowal may be defined as a statement wherein the benefit plan specifically subordinates itself to other coverages. *See Dayton Hudson Dept. Store Co. v. Auto–Owners Ins.,* 953 F.Supp. 177, 179 (W.D.Mich.1995). As discussed, the Draw–Tite Plan explicitly states that where there is a basis for claims under two different "plans," the Draw–Tite Plan is "a Secondary Plan which has its benefits determined after the those of the other plan...." *See* Exh. A to plaintiff's Brief in Support of Motion for Summary Judgment, p. 49. Defendant Allstate attacks plaintiff's assertion that the ERISA plan contains such an express disavowal of other plans.

In *Travelers Ins. Co. v. Auto–Owners Ins. Co.,* 971 F.Supp. 298 (W.D.Mich.1997), the court found that the ERISA plan in that case contained an express disavowal of other plans. The court relied upon the following factors in making this determination:

> [t]he plan COB clause, in relevant part: (1) provides that it "will coordinate the health benefits payable under this Plan with similar benefits payable under other plans;" (2) defines "other plans" as including coverage provided pursuant to a no-fault automobile insurance law; (3) purports to eliminate duplicate coverage; (4) purports to coordi-

**2.** Plaintiff asserts that, according to *Thorn Apple Valley,* there are three criteria for determining priority between a no-fault insurance policy and an employee benefit plan: (1) that the coordination of benefits provision in the employee benefit plan "expressly disavow" claims payable from another source; and (2) that there must be an irreconcilable conflict between the coordination of benefits provisions of the no-fault policy and the employee benefit plan; and (3) that the employee benefit plan be self-funded. This Court agrees that *Thorn Apple Valley* requires an "express disavowal" and "irreconcilable conflict" before priority can be determined in the ERISA plan's favor. However, there is no express re-

quirement in the *Thorn Apple Valley* opinion that the plan be "self-funded." This is a requirement under ERISA itself, the so-called "deemer clause," 29 U.S.C. § 1144(b)(2)(B), which requires an ERISA plan to be self-funded in order to have a preemptive effect on state insurance regulation. *See* 29 U.S.C. § 1144; *see also FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)(interpreting the deemer clause "to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance'"). In the instant case, the Draw–Tite Plan is self-funded, and therefore meets this requirement. *See* Plaintiff's Brief in Support of Motion for Summary Judgment, p. 4.

nate available coverages, setting forth rules for determining which coverage is primary (paying benefits first) and which is secondary; and (5) providing, among such rules, that if no other rule applies, that coverage is primary "which has covered the person for the longest time."

*Id.* at 301. According to plaintiff, the Draw–Tite Plan satisfies these five requirements. First, the ERISA plan does provide that it coordinates health benefits with benefits payable under other plans. Second, it defines automobile no-fault policies as "other plans." Third, it purports to eliminate duplicate coverage. *See* Exh. A to Plaintiff's Brief in Support of Motion for Summary Judgment, pp. 51–52. Fourth, it sets forth rules, as discussed above, for determining primary and secondary coverages. Fifth, the Draw–Tite plan does provide, although not relevant here, that if no other rules apply then the plan with longest coverage is deemed to be primary.

Defendant responds that no express disavowal should be found in the case at bar. Defendant's position hinges principally upon the contention that the Draw–Tite Plan contains a contradictory or, at best, ambiguous definition of "other plan." *See* Defendant's Brief in Support of Motion For Summary Judgment, pp. 7–8. As previously discussed, the Draw–Tite Plan states that it coordinates with no-fault insurance policies, but then also exempts from the term "plan" those "benefits under a law or plan when, by law, its benefits are excess to those of any private insurance plan." However, this Court has found that the Draw–Tite Plan, in light of the Michigan Supreme Court's ruling on the subject, is *not* ambiguous. Pursuant to *Frederick & Herrud,* and its progeny, it is no longer the rule that Michigan no-fault policies will be considered "excess" to any private insurance plans. *See Auto Club Ins. Ass'n v. Frederick & Herrud,* 443 Mich. 358, 388, 505 N.W.2d 820 (1993). In light of this fact, the Allstate policy clearly may be considered an "other plan" for purposes of the Draw–Tite Plan.

Defendant further attempts to equate the Draw–Tite ERISA plan to the one found in *Dayton Hudson,* wherein the court ultimately held that that plan contained no express disavowal. 953 F.Supp. at 180. The Court is not persuaded by defendant's comparison. In *Dayton Hudson,* the ERISA plan under consideration was similar to the Draw–Tite Plan insofar as it included no-fault automobile coverage as "another plan" within its coordination of benefits provision. *Id.* However, the *Dayton Hudson* plan proceeded to provide for an "order of benefit determination," which stated that

[i]f a person is covered under this plan and another plan at the same time, *the plans* will pay benefits in [an order to be determined by four rules]....

*Id.* (emphasis on the plural added). Therefore, in stark contrast to the instant case, the *Dayton Hudson* plan did *not* explicitly provide that it would be secondary to any other plan if certain conditions existed. The *Dayton Hudson* plan did *not* contain language comparable to that found in the Draw–Tite Plan, to the effect that "[w]hen there is a basis for a claim under This Plan and another Plan, This Plan is a Secondary Plan which has its benefits determined after those of the other Plan, ...." Exh. A to Plaintiff's Brief in Support of Motion For Summary Judgment, p. 49. As a consequence, the *Dayton Hudson* court was correct in finding that "the Plan documentation did not 'expressly disavow' or subordinate its coverage to the no-fault insurance." *Dayton Hudson,* 953 F.Supp. at 180. As the court further remarked, "[i]f the Plan had subordinated its coverage to the no-fault insurance, the Plan would have prevailed under *Thorn Apple Valley.*" *Id.*

Defendant also cites the unpublished decision in *Campbell Soup Co. v. Allstate Ins. Co.,* 1996 WL 931576 (W.D.Mich. Jan.10, 1996), wherein the court found that an ERISA plan did not contain an express disavowal of other plans. This case is likewise distinguishable. In *Campbell Soup,* the court found that the benefit plan "does not purport to coordinate its coverage with insurance privately obtained, and it makes no reference to no-fault insurance or any other automobile insurance policy." *Id.* at *3. The Campbell Soup Plan is hardly analogous to the Draw–Tite Plan, which specifically addresses contribution of benefits with respect

to no-fault insurance carriers. The *Campbell Soup* court concluded that "[b]ecause the Campbell Plan does not expressly subordinate itself to the no-fault policy, the Court finds no irreconcilable conflict in the COB clauses." *Id.* at *4. As discussed above, the instant case, by contrast, presents two plans containing COB provisions which are irreconcilably in opposition.

■ In light of the foregoing, under the principles articulated in *Thorn Apple Valley,* applying federal common law, the terms of the Draw–Tite ERISA benefit plan must be given priority over the Allstate no-fault personal protection policy. Where a direct conflict between COB provisions and an express disavowal of other plans is found, the Court must give full effect to the ERISA plan in order "to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims." *Thorn Apple Valley,* 31 F.3d at 375. The Court will accordingly grant plaintiff CNA's motion for summary judgment and deny defendant Allstate's motion for summary judgment. Plaintiff has overcome its burden of showing that no genuine issue of material fact exists, and is entitled to judgment as a matter of law.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiff/counter-defendant CNA Insurance Company's motion for summary judgment is **GRANTED;**

**IT IS FURTHER ORDERED** that defendant/counter-plaintiff Allstate Insurance Company's motion for summary judgment is **DENIED;**

**IT IS FURTHER ORDERED** that defendant/counter-plaintiff Allstate Insurance Company shall be primarily liable for the medical expenses of Chelsea Schwalbe; a judgment in accordance with this order shall be entered forthwith.

**SO ORDERED**