YERKOVICH v AAA

Docket No. 112891. Argued January 11, 2000 (Calendar No. 4). Decided April 25, 2000.

Mary J. Yerkovich, for herself and as next friend of Lisa Yerkovich, a minor, brought an action in the Macomb Circuit Court against the AAA, her insurer, and the Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Fund, seeking medical expenses incurred following the injury of Lisa Yerkovich in an automobile accident. The fund, a self-funded employee welfare benefit plan created and administered pursuant to 29 USC 1001 *et seq.*, initially denied coverage, claiming that the plaintiff had failed to execute a subrogation agreement as required by the plan's subrogation clause. The plaintiff eventually signed the "Subrogation Agreement and Assignment" form, and the fund paid $6,832 in medical expense benefits. The AAA also denied coverage, claiming that the plaintiff's policy contained a coordination of benefits clause that made the fund primarily responsible for medical expenses. The plaintiff also settled a negligence claim for noneconomic damages against the driver of the vehicle in which her daughter was riding. The court, Michael D. Schwartz, J., granted summary disposition for the plaintiff and the fund and ordered the AAA to repay the plaintiff any sums she paid to reimburse the fund. The Court of Appeals, MCDONALD and CAVANAGH, JJ. (MARKMAN, P.J., dissenting), affirmed. 231 Mich App 54 (1998) (Docket No. 198307). The AAA appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice WEAVER, and Justices TAYLOR and CORRIGAN, the Supreme Court *held*:

The subrogation clause did not confer on the fund the right to be reimbursed out of the plaintiff's third-party tort recovery. The pre-existing duty rule barred the fund from requiring plaintiff to take on additional burdens, without consideration, in order to get paid what she was owed.

1. Under the language of the plan agreement, the fund's right of reimbursement is triggered only if the plaintiff impairs or negates the fund's right of subrogation, which was not done in this case. The fund may step into the plaintiff's shoes and sue the negligent driver for medical expenses incurred, because plaintiff has yet to

seek them. The fund might have, but did not, place language in the plan agreement requiring reimbursement of medical expenses by the plaintiff. Instead, it sought only subrogation as defined in the second paragraph. Therefore, it has no right to reimbursement from the plaintiff for medical expenses. Whether the second agreement entitled the fund to reimbursement is irrelevant because the fund was under a preexisting duty to pay the plaintiff's medical expenses and could not require her to take on additional duties absent additional consideration.

2. An essential element of a contract is legal consideration. Under the preexisting duty rule, doing what one is legally bound to do is not consideration for a new promise. The rule bars the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform what one party was already required to do under the terms of the existing agreement. In this case, the plan agreement provided that the fund had a preexisting duty to pay the plaintiff's medical expenses. This promise was conditioned upon the fund's right of subrogation being protected. The second agreement is void for lack of consideration. Plaintiff was required only to sign documents ensuring the fund's right of subrogation as defined by the fund. Instead, the second agreement attempted to increase the plaintiff's duties and burdens by adding an obligation to repay sums paid by the fund out of any judgment or settlement she received. The result is that plaintiff took on additional obligations, without consideration, in order to be paid what she was already owed. Such additional obligations are unenforceable.

Reversed.

Justice KELLY, dissenting, stated that the no-fault insurance act requires defendant AAA to pay the plaintiff's medical expenses.

The fund is an employee benefits plan under the Employee Retirement Income Security Act that granted its administrators complete discretion in construing its terms. On the basis of the standard enunciated in *Firestone Tire & Rubber Co v Bruch*, 489 US 101 (1989), and the principles of federal preemption under the Supremacy Clause, deference should be given the fund's interpretation of its own agreement.

While, under the no-fault act, a coordinated benefits provision like the one in this case may lower the responsibility for some expenses arising from an automobile accident, it does not eliminate it. If the health insurer does not cover the full costs of medical expenses related to an automobile accident, the no-fault insurer is responsible for the balance. Defendant AAA agreed to cover any medical expenses arising from an automobile accident not covered

by the insurance company primarily responsible for medical expenses. Whether and how much of the medical expenses are covered is determined by the agreement between the insured and the other insurance company.

Justices YOUNG and MARKMAN took no part in the decision of this case.

*Fraser & McHugh, P.C.* (by *Stuart A. Fraser* and *Carrie L. Fuca*), for plaintiff-appellee.

*Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *Charles Trickey, III*), and *John A. Lydick*, of counsel, for defendant-appellant.

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *I. Mark Steckloff* and *Reginald M. Turner, Jr.*), for defendant-appellee.

Amici Curiae:

*Miller, Shpiece & Andrews, P.C.* (by *Wayne J. Miller* and *Michael R. Shpiece*), for Professors Miller and Shpiece.

CAVANAGH, J. The issues presented are: (1) whether the subrogation agreement between defendant fund and plaintiff Yerkovich entitled the fund to reimbursement from plaintiff for medical expenses and, if so, (2) whether plaintiff's no-fault insurer, defendant AAA, must refund plaintiff for that reimbursement. We hold that the subrogation clause did not confer upon the fund the right to be reimbursed out of plaintiff's third-party recovery from tortfeasors. Because we hold that the fund was not entitled to reimbursement, we do not reach the second question.

FACTS

Plaintiff's minor daughter was injured in an automobile accident when the driver of the vehicle in which she was riding negligently collided with another vehicle. At the time of the accident, plaintiff was a participant in the Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Fund. The fund is a self-funded employee welfare benefit plan created and administered pursuant to the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* Plaintiff also had a no-fault policy issued by defendant AAA.

Plaintiff filed this action on behalf of her daughter against both defendants, seeking payment of medical expenses. The fund had initially denied coverage, claiming plaintiff had failed to execute a subrogation agreement. The fund claimed this was required by the plan's subrogation clause. Plaintiff eventually signed the "Subrogation Agreement and Assignment" form, and the fund paid $6,832 in medical expense benefits. The AAA also denied coverage, claiming that plaintiff's policy contained a coordination of benefits clause that made the fund primarily responsible for medical expenses from the accident. Plaintiff also filed a negligence claim seeking noneconomic damages against the driver of the vehicle in which her daughter was riding. That case was settled for $20,000.

Plaintiff and the fund each filed motions for summary disposition in the trial court, essentially advancing the same position. The fund argued that, pursuant to the plan, plaintiff was required to reimburse the fund the $6,832 it had paid for medical expenses out of her third-party tort recovery. Plaintiff and the fund

agreed that if such reimbursement were required, it would result in plaintiff paying her own medical expenses, contrary to the provisions of the no-fault act. Plaintiff and the fund argued that the AAA should be responsible for paying for the medical expenses. The AAA argued that the language of the subrogation agreement between plaintiff and the fund did not support a right to reimbursement and limited reimbursement to situations where plaintiff recovered medical expenses from a third-party suit. The trial court granted the motions for summary disposition and ordered the AAA to repay plaintiff any sums she paid to reimburse the fund. The Court of Appeals affirmed. 231 Mich App 54; 585 NW2d 318 (1998).

THE SUBROGATION AGREEMENT

At issue in this case is the interpretation of the plan agreement between the fund and plaintiff. Specifically, we must answer whether the fund was entitled to a refund from plaintiff for medical expenses. The fund provided plaintiff with a plan booklet that laid out the rights, benefits, and duties of the parties. Under the "General Provisions" section, the plan provided a subsection entitled "Third Party Subrogation." The fund argues that, under this section, plaintiff was required to sign further documents ensuring its rights to subrogation, reimbursement, repayment, and assignment. It provides in pertinent part:

This Plan will take advantage of its *right to subrogation* if you or an eligible dependent are paid benefits by the Plan due to accidental injuries for which someone else may be liable.

*Subrogation* means that the Plan can recover *from the person who caused the injury,* or that person's insurance

company, the benefits paid on your behalf by the Plan for that injury, including but not limited to . . . tortious conduct by a third party. . . .

   . . . [Y]ou or your dependent will have certain responsibilities to the Plan. When you or your eligible dependent submit a claim to this Plan for injuries, the Fund Office will have you complete a form requesting information as to how the injuries occurred and the identity of any potentially responsible third parties. At the request of the Fund Office, *you must also sign any other documents* and do whatever else is reasonably necessary *to secure this Plan's right of subrogation.* You must not do anything to impair or negate this Plan's right of subrogation; *if* any of your acts or omissions to act compromise this Plan's right of subrogation, this Plan will seek *reimbursement* of all appropriate benefits paid directly to you . . . .

   If you recover lost wages benefits from another source, e.g. from an individual who caused the injury which resulted in your receiving Time Loss Weekly Benefits, the Plan has the *right to seek repayment* from *you* . . . . [Emphasis added.]

Under this plan, the fund declared "subrogation" rights in order to recover from a third party medical expense benefits it paid. In contrast, it declared the right to "repayment" from plaintiff for lost wage benefits it paid in the event that plaintiff recovered the lost wages "from any other source."

Traditional subrogation is defined by Black's Law Dictionary (4th ed), p 1595, as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, . . . so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." As a subrogee, one stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor. *Shermer v Merrill,*

33 Mich 284, 287 (1876). In this case, the fund provided its own definition for "subrogation" in the second paragraph of that subsection. It explains that subrogation means the fund may "recover from the person who caused the injury, or that person's insurance company . . . ." This is consistent with the traditional definition.

Although the agreement provides that the fund may "recover *from the person who caused the injury,*" the fund seeks to recover instead from plaintiff. It has done so by arguing that the second agreement signed by plaintiff required plaintiff to repay, reimburse, subrogate, and assign sums and rights to the fund.[1] It is agreed that plaintiff signed the second agreement—that greatly expanded her duties under the plan agreement—only after the fund conditioned the payment of medical expenses on her signing the second agreement.

---

[1] The second agreement provides in pertinent part:

Subrogation Agreement and Assignment

I agree . . . that if the plan advances benefits . . . I will *repay* the plan in full any sums advanced to cover such expenses *from any judgement or settlement* I or my dependents receive.

I further agree that this promise to *reimburse* the fund is a lien against and assignment of any such recovery . . . .

I agree that the fund shall be *subrogated* in the amount of any sums paid by the fund to my . . . rights of recovery against the third party. All such sums recovered, by suit, settlement, or otherwise, shall be paid over to the fund.

I hereby *assign* to the fund all claims that I . . . may have against the third party for payment and/or reimbursement of costs and expenses incurred by the fund for medical and/or hospital and/or disability benefits arising out of said accident . . . .

I hereby *assign* my right to sue for, compromise, and to recover and receive all or a part of the amount assigned . . . . [Emphasis added.]

Under the plan agreement, the fund was entitled to seek recovery from the negligent driver for the medical expenses it paid. Plaintiff, in return, was required to sign documents necessary to secure the fund's right of subrogation. Plaintiff was also required to provide any information requested regarding the injuries and the identity of the tortfeasor. *If* plaintiff impaired that right of "subrogation," the fund could *then* seek reimbursement. Plaintiff has done nothing to hinder or obstruct the fund's rights of subrogation. Plaintiff did not sue the tortfeasor for medical expenses or any economic damages. Instead, plaintiff recovered from the tortfeasor purely noneconomic damages for pain and suffering. The fund does not claim that it has paid noneconomic damages. It does not claim that it had a right of subrogation for noneconomic damages, only for benefits it paid. It paid only medical expense benefits. Nor does the plan agreement provide that it may seek reimbursement from plaintiff for medical expenses from plaintiff's noneconomic damage recovery. Under the language of the plan agreement, the fund's right of reimbursement is triggered only if the plaintiff impairs or negates the fund's right of subrogation. This was not triggered. In fact, the fund may step into plaintiff's shoes and sue the negligent driver for medical expenses incurred, because plaintiff has yet to seek them.[2]

Moreover, the fund might have, but did not, place language in the plan agreement requiring reimbursement of medical expenses from plaintiff. Instead, it

---

[2] We make no assertion about the validity or probable success of such a suit.

sought only subrogation as defined in the second paragraph. Therefore, it has no right to reimbursement from plaintiff for medical expenses. This view is strengthened by examining the final paragraph quoted from the plan agreement where the fund demanded "repayment" from the *plaintiff* for lost wage benefits, in contrast to the "subrogation" clause, which allows recovery from the *person who caused the injury* for medical expense benefits.

The fund argues that subrogation *and* reimbursement rights are triggered whenever a plan participant recovers monies for the same injury or accident from a third party. It also urges that we should apply an "arbitrary and capricious" standard of review to the fund's interpretation of the plan agreement, citing *Firestone Tire & Rubber Co v Bruch*, 489 US 101; 109 S Ct 948; 103 L Ed 2d 80 (1989). Even under such a standard, we cannot read into the plan agreement that which does not exist. The fund had the opportunity to write into its agreement repayment or reimbursement rights. It did not.

Whether the second agreement entitled the fund to reimbursement is irrelevant to our analysis because the fund was under a preexisting duty to pay plaintiff's medical expenses and could not require her to take on additional duties absent additional consideration.

### PREEXISTING DUTY RULE

An essential element of a contract is legal consideration. *Detroit Trust Co v Struggles*, 289 Mich 595, 599; 286 NW 844 (1939). Under the preexisting duty rule, it is well settled that doing what one is legally bound to

do is not consideration for a new promise. *Puett v Walker*, 332 Mich 117, 122; 50 NW2d 740 (1952). This rule bars the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement. *Borg-Warner Acceptance Corp v Dep't of State*, 433 Mich 16, 22, n 3; 444 NW2d 786 (1989).

In this case, the plan agreement provided that the fund had a preexisting duty to pay plaintiff's medical expenses. This promise was conditioned upon the fund's right of subrogation being protected. As stated, these rights were protected.

Although the parties focus on the second agreement, we find it is void for lack of consideration. Plaintiff was required only to sign documents ensuring the fund's right of subrogation as defined by the fund. The second agreement instead attempted to add to plaintiff's duties and burdens. The second agreement added an obligation to "repay" sums paid by the fund out of "any judgment or settlement" she received. The next paragraph required her to "reimburse" the fund out of any recovery she received. Although the third paragraph included subrogation rights, we will not interpret the language to allow greater rights or duties than those in the original plan agreement. The final paragraphs added assignments of plaintiff's claims and rights to the fund. The result is that plaintiff took on additional obligations, without consideration, in order to be paid that which she was already owed. All such additional obligations are unenforceable.

CONCLUSION

The original plan agreement between plaintiff and the fund required the fund to pay plaintiff's medical expenses as long as its right of subrogation was protected. Absent a breach by plaintiff, the fund had no rights of reimbursement for medical expense benefits from plaintiff. We hold that the preexisting duty rule barred the fund from requiring plaintiff to take on additional burdens, without consideration, in order to get paid that which she was owed. Because the second contract was invalid for lack of consideration, we hold that the fund was not entitled to a reimbursement from plaintiff. We, therefore, reverse the Court of Appeals affirmance of the trial court's grant of summary disposition and order defendant fund to repay to the plaintiff any sums plaintiff paid to reimburse the fund.

WEAVER, C.J., and TAYLOR and CORRIGAN, JJ., concurred with CAVANAGH, J.

KELLY, J. (*dissenting*). I would affirm the Court of Appeals decision. The trial court correctly granted summary disposition in favor of plaintiff Yerkovich and against defendant AAA. The no-fault insurance act[1] requires defendant AAA to pay plaintiff's medical expenses.

I

Because the fund is an employee benefits plan under the Employee Retirement Income Security Act

---

[1] MCL 500.3101 *et seq.*;  MSA 24.13101 *et seq.*

(ERISA),[2] federal law preempts any state law that applies to insurance in general. *Sibley v DAIIE*, 431 Mich 164, 170; 427 NW2d 528 (1988). If an ERISA plan grants its administrators complete discretion to interpret the terms of the plan agreement, their interpretation is reviewed under an "arbitrary and capricious" standard. *Firestone Tire & Rubber Co v Bruch*, 489 US 101, 114; 109 S Ct 948; 103 L Ed 2d 80 (1989). Here, the fund's plan agreement did grant its administrators complete discretion in construing its terms. Michigan United Food and Commercial Workers Unions and Food Employers Health and Welfare Plan, dated April 1, 1993, § 2.

On the basis of the standard enunciated in *Firestone* and the principles of federal preemption under the Supremacy Clause,[3] I would defer to the fund's interpretation of its own agreement. Language in the first agreement required plaintiff to sign any documents needed to protect the fund's subrogation rights. This language could be interpreted to require her to sign the second agreement at the time she did. The preexisting duty rule would not preclude enforcing the second agreement.

Instead of picking apart the plan's interpretation of its agreement, I would analyze this case according to the schema of the no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

II

Under the no-fault act, a no-fault insurer must provide "all reasonable charges incurred for reasonably

---

[2] 29 USC 1001 *et seq.*

[3] US Const, art VI.

necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a); MSA 24.13107(1)(a). The act allows an insured party to elect coordinated coverage. MCL 500.3109a; MSA 24.13109(1). The insured pays a lower premium. In return, the no-fault carrier is secondarily responsible for certain expenses arising from an accident. The insured's other insurer, such as a health insurer, becomes primarily responsible to the extent of the risk it contracted to cover. *ACIA v Frederick & Herrud, Inc (After Remand)*, 443 Mich 358, 384, 390; 505 NW2d 820 (1993).

A coordinated benefits provision, like the one between plaintiff and the AAA, may lower the AAA's responsibility for some expenses arising from an automobile accident, but it does not eliminate it. If the health insurer does not cover the full costs of medical expenses related to an automobile accident, the no-fault insurer is responsible for the balance. *Transamerica Ins Co of America v IBA Health Life Assurance Co*, 190 Mich App 190, 196; 475 NW2d 431 (1991).

The no-fault act is construed liberally in favor of persons intended to benefit from the act, those injured in automobile accidents. *Reed v Citizens Ins Co*, 198 Mich App 443, 451; 499 NW2d 22 (1993). "The act is designed to minimize administrative delays and factual disputes that would interfere with achievement of the goal of expeditious compensation of damages suffered in motor vehicle accidents." *Miller v State Farm Mut Automobile Ins Co*, 410 Mich 538, 568; 302 NW2d 537 (1981).

Hence, defendant AAA agreed to cover any medical expenses arising from an automobile accident not covered by the insurance company primarily respon-

sible for medical expenses. Whether and how much of the medical expenses are covered is determined by the agreement between the insured and the other insurance company. *Tousignant v Allstate Ins Co*, 444 Mich 301, 312; 506 NW2d 844 (1993).

When an insured's health insurance is an ERISA plan, sometimes the no-fault insurer is primarily responsible for medical expenses arising from an automobile accident. *Frederick & Herrud*, 443 Mich 390. As among the parties, defendant AAA is in the best position to calculate and cover the risk that arises when its insureds sign subrogation agreements, like the one at issue. It should not be heard to complain when they sign agreements with ERISA-based health insurers that strip it of the benefit of the bargain under the coordinated benefits provisions of the no-fault act.

#### CONCLUSION

Although plaintiff Yerkovich paid premiums for no-fault automobile coverage, she suffered unreasonable delay and expense in recovering her losses arising from an automobile accident. This delay is contrary to the no-fault act's purpose of "expeditious compensation of damages suffered in motor vehicle accidents." *Miller*, 410 Mich 568. The majority opinion's approach to this case does not further the purpose of the act. To avoid the same delay to an insured in the future, and for the reasons set forth above, I would affirm the Court of Appeals decision. Defendant AAA should be required to compensate plaintiff for her medical expenses arising from her daughter's automobile accident.

YOUNG and MARKMAN, JJ., took no part in the decision of this case.