*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL J. WOLLSCHLAGER,

        Plaintiff-Appellant,

v

DONALD GRILL, RONALD JUSTICE, FENTURA
FINANCIAL, INC., and THE STATE BANK,

        Defendants-Appellees.

UNPUBLISHED
December 1, 2022

No. 358590
Genesee Circuit Court
LC No. 21-115542-CB

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(7) (statute of limitations; barred by release), (C)(8) (failure to state a claim on which relief can be granted), and (C)(10) (no genuine issue of material fact), in this action involving claims for fraud and misrepresentation arising from employment separation agreements. We affirm the order granting defendants summary disposition.

## I. BACKGROUND

In October 2008, plaintiff accepted an offer to serve as the Senior Vice President and Chief Lending Officer for defendant, The State Bank ("the Bank"). At the time, defendant Donald Grill was the director of the Bank and the director, president, and CEO of defendant Fentura Financial, Inc. ("Fentura"), a subsidiary of the Bank. The original terms of plaintiff's employment included a Supplemental Executive Retirement ("SERP") Agreement with Fentura, dated October 24, 2008, that provided him with an incentive to remain employed at the Bank for five years by earning a deferred benefit for each year of employment. Grill negotiated that agreement on behalf of the Bank and Fentura.

Approximately a year after plaintiff was hired, the Bank entered into a consent order with the Federal Deposit Insurance Corporation (FDIC) because of the Bank's troubled financial condition, and plaintiff agreed to a five-percent reduction in his salary, as did other personnel. In November 2010, Fentura also entered into an agreement with the Federal Reserve Bank of Chicago (FRB) because it too was having financial problems.

On December 21, 2010, at the request of the Bank and Fentura, plaintiff and Fentura entered into an amended retirement compensation agreement ("Amended SERP Agreement"), which was offered to again give plaintiff an incentive to remain employed with the Bank while it worked out its financial problems. The Amended SERP Agreement offered plaintiff the same annual deferred benefit of $35,000 for each year of employment, but extended the maximum number of years to seven years, for a total available benefit of $245,000. The Amended SERP Agreement rescinded and replaced the prior agreement.

FDIC rules and regulations require agency approval of "golden parachute payments" to employees of banks determined to be in a troubled condition. See *Wollschlager v FDIC*, 992 F3d 574, 578-579 (CA 6, 2021). There is no dispute that the payments owed under the Amended SERP Agreement constitute golden-parachute payments. Plaintiff alleges that he was never advised that approval from the FDIC and the FRB was needed and had not been obtained for the payments specified in the Amended SERP Agreement. Plaintiff further alleges that he would not have agreed to remain employed with the Bank had he been so informed.

In 2011, Defendant Ronald Justice was hired as the new CEO at the Bank and the Bank decided to terminate plaintiff's employment. Plaintiff, the Bank, and Fentura entered into an agreement on September 20, 2011, setting forth the terms of plaintiff's separation from employment and releasing all claims against defendants ("the Separation Agreement"). Because plaintiff's employment was terminated without cause, he was entitled to the full benefit of the Amended SERP Agreement and his termination was classified as an early retirement.

The Separation Agreement divided the amount to be paid to plaintiff under the Amended SERP Agreement into two separate payments. Plaintiff was to be paid $137,749 (equal to one year of plaintiff's reduced salary) within 60 days of the termination date. The remaining $107,251 was to be paid to plaintiff within 30 days after the Bank was no longer subject to the FDIC's consent order and Fentura was no longer subject to its consent agreement with the FRB. Defendants did not obtain approval from the FDIC or the FRB for the Separation Agreement. However, the Separation Agreement indicated that regulatory approval was needed for payments owed to plaintiff under the Amended SERP Agreement:

> 2. **Payments under SERP**. *Assuming that the Bank and Fentura Financial, Inc. are able to obtain the necessary regulatory approval to make such payments to you under applicable law, including not by way of limitation, the restrictions on golden parachute payments set forth in 12 C.F.R. § 359.0, et seq.*, the payments due to you under the Amended and Restated Supplemental Executive Retirement Agreement between you and Fentura Financial, Inc. dated December 21, 2010 (the "SERP"), will be paid as follows . . . . [Emphasis added.]

Plaintiff was also to receive a separation payment in the amount of $28,062.36 within 30 days of defendants no longer being subject to regulatory control.

According to the complaint, defendants contacted the FDIC and the FRB on September 23, 2011, requesting permission to make the first payment owed to plaintiff under the Amended SERP Agreement and the Separation Agreement. The FRB approved Fentura's request to pay plaintiff $137,749, and the FDIC also approved that payment on October 17, 2012.

-2-

After the regulatory enforcement actions were lifted against Fentura and the Bank in 2013, Fentura and the Bank sought permission from the FDIC and the FRB to make a second payment to plaintiff consisting of the $107,251 owed under the Amendment SERP Agreement and the $28,062.36 owed under the Separation Agreement. On June 22, 2017, the FRB gave its written approval, but on November 17, 2017, the FDIC denied approval of the additional payments to plaintiff. The FDIC's letter denying the second payment to plaintiff explained:

> After careful consideration, the FDIC does not concur with the FRB's approval, and denies the present application. Mr. Wollschlager has already obtained regulatory approval and received a golden parachute payment of $137,749, an amount equaling 12 months' salary, on October 17, 2012. When combining this payment with the current proposal, the total golden parachute payment contemplated would equal $273,062.36, or almost two times Mr. Wollschlager's annual salary. Under these circumstances, the FDIC finds that the proposed payment would be unreasonable for services rendered over the applicable period of employment, and contrary to the purposes behind 12 U.S.C. § 1828(k); 12 C.F.R. § 359.4(b); see also 60 Federal Register 16069-16073 (March 29, 1995). This correspondence represents the FDIC's final agency determination concerning the present application.

Upon the FDIC's denial of the payments, plaintiff filed an action in the United States District Court for the Eastern District of Michigan, seeking a review of the FDIC's decision under the federal Administrative Procedures Act, 5 USC 706. After the federal district court entered a judgment for the FDIC, plaintiff appealed the district court's ruling to the Sixth Circuit Court of Appeals. On March 31, 2021, the Sixth Circuit affirmed the district court's decision, concluding that the FDIC's denial of payment was not arbitrary or capricious considering that prior approval was not obtained and the amount of the proposed payment. See *Wollschlager*, 992 F3d at 581-582.

Plaintiff filed the instant suit on April 23, 2021, alleging claims of fraud, silent fraud, negligent misrepresentation, and innocent misrepresentation. The thrust of these claims is essentially the same: defendants failed to disclose that regulatory approval was needed, and not obtained, for the Amended SERP Agreement and the Separation Agreement, and plaintiff would not have entered into those agreements had he been so informed.

Defendants moved for summary disposition early in the proceedings on numerous grounds, including that: the Separation Agreement contained a release barring plaintiff's claims as a matter of law; plaintiff's claims were barred by the six-year statute of limitations because the claims accrued no later than September 20, 2011; defendants owed plaintiff no duty to advise him of federal legal requirements surrounding golden-parachute payments; and plaintiff was barred by the economic-loss doctrine from recasting his previously dismissed contracts claim into tort claims. Plaintiff had filed a federal lawsuit against defendants in 2016 claiming breach of contract for failure to make the agreed-upon payments. Plaintiff agreed to voluntarily dismiss that suit after defendants argued it was premature because at that time FDIC had not made a final decision on whether to approve the payments to plaintiff.

In response, plaintiff argued that each of the defenses asserted by defendants failed and defendants' motion should be denied. Plaintiff first argued that he did not release his claims for fraud because the claims were premised on the theory that he was fraudulently induced to enter into the agreements in question. Alternatively, there was no consideration to support the release, because any consideration he received was paid pursuant to the previous agreements. Plaintiff also argued that his claims did not accrue until the appeals seeking review of the FDIC's decision denying approval of the payments were exhausted. Plaintiff maintained that if he had filed this action before those appeals were exhausted, defendants would have claimed that the lawsuit was prematurely filed, and that this is what occurred when his previous lawsuit was voluntarily dismissed. Plaintiff also argued that the economic-loss doctrine did not bar his claims because that rule is limited to cases under the Uniform Commercial Code.

The trial court asked the parties to submit supplemental briefs on the statute-of-limitations issue and the economic-loss doctrine. At the motion hearing, the trial court granted defendants' motion for summary disposition, stating that it agreed with defendants' arguments "in full." An order was entered granting defendants' motion for summary disposition for the reasons stated on the record.

## II. DISCUSSION

### A.

As an initial matter, on appeal plaintiff has challenged only three issues related to the trial court's decision to grant summary disposition: (1) whether plaintiff's claims are barred by the applicable statute of limitations; (2) whether the doctrine of judicial estoppel forecloses defendants from relying on a statute-of-limitations defense; and (3) whether the claims are barred by the economic-loss doctrine. However, in granting summary disposition, the trial court stated that it agreed with all of defendants' arguments, even though it did not make specific, detailed rulings on each issue, and those arguments included grounds that plaintiff does not raise in this appeal. In particular, plaintiff does not address defendants' arguments based on the release and lack of duty. Plaintiff maintains that the trial court did not actually rule on these issues. But even if we agreed with plaintiff's interpretation of the trial court's ruling, we may consider alternative grounds for affirming a trial court's decision, so long as those grounds were raised below and would not grant defendants relief more favorable than rendered in the trial court. See *Vanslembrouck v Halperin*, 277 Mich App 558, 565-566; 747 NW2d 311 (2008). For the reasons that will be discussed, we conclude that summary disposition was appropriate on the basis of the broad release contained in the Separation Agreement. Because this issue is dispositive of plaintiff's claims, we need not address the issues he raises in his appellant brief or any additional grounds that may support summary disposition.[1]

_____

[1] A trial court's decision on a motion for summary disposition is review de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition may be granted under MCR 2.116(C)(7) on the basis of a release. The following standards apply to a motion brought under that subrule:

-4-

B.

"The scope of a release is controlled by the intent of the parties as it is expressed in the release." *Gortney v Norfolk & Western R Co*, 316 Mich App 535, 540; 549 NW2d 612 (1996). The Separation Agreement provides, in relevant part:

> 6. **<u>Complete Release by Wollschlager</u>**. In consideration of the agreements by the Bank set forth in paragraph 1, above, the payments described in paragraph 3 and paragraph 4, above, and the other agreements made by the Bank elsewhere in this Letter Agreement, the adequacy of which you hereby acknowledge, you, on your own behalf and on behalf of any dependents, spouse, heirs, successors and assigns, do hereby forever generally release the Bank, Fentura Financial, Inc., or any entity affiliated with them, their parent, subsidiary and affiliated companies and their current or former directors, attorneys, organizers, staff, and any individual or entity currently or formerly employed by or affiliated with the Bank, Fentura Financial, Inc., or any entity affiliated with them (collectively, the "Releasees") *from all rights, claims, actions, and suits of all kinds and descriptions that you ever had, now have, or hereafter can, shall, or may have, whether known or unknown or based on facts now known or unknown, fixed or contingent*, against the Releasees, *occurring at any time up to and including the date that you execute this Letter Agreement, by reason of or arising out of any acts, matters, or omissions of the Releasees, regarding your employment with the Bank, any events occurring during the course of your employment or the termination of your employment by the Bank, including, but not limited to*, claims of unlawful discrimination due to race, sex, religion, national or ethnic origin, handicap, disability, marital status, ancestry or age; claims that the Bank violated any promises or agreement either express or implied with you (including claims that the Bank violated the employee handbook); claims that the Bank has terminated your employment for any illegal reason, or in an illegal fashion, including, specifically, without limiting the generality of the foregoing, any claim under the National Labor Relations Act (as amended), Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination in Employment Act ("ADEA") (as amended), the Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act, the Fair Labor Standards Act, the Worker Adjustment and Retraining Notification Act, the Elliott-Larsen Civil Rights Act, or

---

A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3); *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). If such documentation is submitted, the court must consider it. MCR 2.116(G)(5). If no such documentation is submitted, the court must review the plaintiff's complaint, accepting its well-pleaded allegations as true and construing them in a light most favorable to the plaintiff. [*Turner v Mercy Hosps & Health Servs of Detroit*, 210 Mich App 345, 348; 533 NW2d 365 (1995).]

any other federal, state, or local law or regulation prohibiting discrimination; or any claim for employment discrimination, violation of public policy, emotional distress, defamation, wrongful termination, wages, severance pay, bonus, sick leave, holiday pay, vacation pay, life insurance, health and medical insurance, attorneys' fees, or any other compensation or fringe benefit. *This Letter Agreement covers both claims that you know about, and those that you may not know about*.

. . . By signing this Letter Agreement, you are forever giving up your rights to make the aforementioned claims or demands. [Emphasis added.]

Plaintiff does not dispute that the scope of this release includes his tort claims, which are premised on his contention that defendants misled him about whether defendants needed to obtain and had obtained the necessary regulatory approval to make the payments promised in the Amended SERP Agreement and the Separation Agreement. Instead, he argues in his reply brief that because he is challenging the agreements on the basis of fraud, the release contained in the Separation Agreement may not be enforced until his fraud claim is addressed.

A release may be challenged on the ground that it was procured by fraud. See *Rinke v Automotive Moulding Co*, 226 Mich App 432, 436; 573 NW2d 344 (1997).[2] However, although plaintiff alleged that he was not aware of the need for regulatory approval of the promised payments or aware that defendants had not obtained that approval, ¶ 2 of the Separation Agreement provided him with notice that regulatory approval of the promised payments was required and had not yet been obtained. Again, that provision provides:

2. **Payments under SERP**. *Assuming that the Bank and Fentura Financial, Inc. are able to obtain the necessary regulatory approval to make such payments to you under applicable law, including not by way of limitation, the restrictions on golden parachute payments set forth in 12 C.F.R. § 359.0, et seq.*, the payments due to you under the Amended and Restated Supplemental Executive Retirement Agreement between you and Fentura Financial, Inc. dated December 21, 2010 (the "SERP"), will be paid as follows . . . . [Emphasis added.]

The terms of the Separation Agreement warned plaintiff that regulatory approval was required for any golden-parachute payments, and the release clause in ¶ 6 of the Separation Agreement broadly applies to all claims plaintiff may have against defendants. On this basis, the release bars plaintiff's claims because it forecloses any arguments that he was misled by defendants regarding the need to obtain regulatory approval for the promised payments at the time he signed

---

[2] *Rinke* observed that a release may not be challenged on the basis of fraud unless the plaintiff "tender the consideration they received in exchange for the release." *Rinke*, 226 Mich App at 436. The parties make competing arguments on whether the tender-back rule applies in this case. We decline to resolve this issue, however, because even if we agree that plaintiff was not required to tender back the payments he had already received, he still cannot avoid application of the release in the Separation Agreement for the reasons discussed herein.

the Separation Agreement. Even if plaintiff was earlier misled when he signed the Amended SERP Agreement, he released any claims related to the Amended SERP Agreement when he signed the Separation Agreement after being duly advised that regulatory approval for the promised payments was necessary. For this reason, plaintiff has no viable fraud claim with respect to the Separation Agreement, which contains the release clause.

In his reply brief, plaintiff also argues that there was no consideration for the Separation Agreement and that there was a preexisting duty to pay him the amounts addressed in the Separation Agreement because those amounts were already promised in the Amended SERP Agreement. The modification of an existing contractual relationship cannot be supported by the performance or promise to perform what a party is already required to do under the terms of an existing agreement. *Yerkovich v AAA*, 461 Mich 732, 740-741; 610 NW2d 542 (2000). The Separation Agreement, however, included new terms because plaintiff was allowed to retire earlier in exchange for the promised payments. Further, the Separation Agreement contains a clause whereby plaintiff acknowledged that the agreement was supported with sufficient consideration, specifically the additional $28,062.36 and the payment of a referral fee if a certain account was transferred to the Bank.[3] In addition, the Bank agreed to release any claims against plaintiff. For these reasons, we conclude that there was separate consideration to support the release clause. Plaintiff has not shown that the release was invalid under the preexisting duty rule.

In sum, while plaintiff attempts to challenge the Separation Agreement on grounds of fraud because defendants did not make him aware of the need for regulatory approval or advise him that approval was not yet obtained, the terms of the Separation Agreement provided plaintiff with notice that the payments required approval and that defendants had yet to receive that approval. Accordingly, plaintiff cannot avoid the operation of the release clause in the Separation Agreement, and his tort claims in this matter are barred for that reason.

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

[3] Plaintiff emphasizes that he has not received the separation payment of $28,062.36, but nonperformance of a contractual obligation does not mean that there was inadequate consideration; rather, it gives rise to an action for damages. See *Wardell v Williams*, 62 Mich 50, 59; 28 NW 796 (1886).