*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN PAIN MANAGEMENT, LLC, and
LABORATORY SPECIALISTS OF MICHIGAN,
LLC,

        Plaintiffs-Appellants,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY and PROGRESSIVE MICHIGAN
INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
January 16, 2026
10:07 AM

No. 373896
Oakland Circuit Court
LC No. 2024-206468-NF

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this insurance coverage dispute involving personal injury protection ("PIP") benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiffs, Michigan Pain Management, LLC (MPM), and Laboratory Specialists of Michigan, LLC, appeal as of right the opinion and order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to defendants, Progressive Marathon Insurance Company and Progressive Michigan Insurance Company (collectively, Progressive), and determining plaintiffs were not entitled to PIP benefits because the underlying claimant, Stacie Washington, lacked coverage on the date of the subject automobile accident. Plaintiffs challenge the earlier opinion and order granting partial summary disposition under MCR 2.116(C)(10) to Progressive, dismissing MPM's claims for treatment because it was not reasonably necessary for Washington's care. We affirm.

## I. BACKGROUND

This matter stems from injuries sustained by Washington in a July 6, 2023 motor vehicle accident and her treatment by two medical providers. Before the accident, Washington obtained an automobile insurance policy for PIP benefits with Progressive, which was to be effective from April 5, 2023 until October 5, 2023. When Washington signed up for the policy, she saved a debit card to her account for future payments. Washington paid the first two monthly premiums.

However, the next payment was declined on June 5, 2023. A cancellation notice was mailed to Washington on June 9, 2023, indicating that the policy would be cancelled at 12:01 a.m. on June 22, 2023, for nonpayment of a premium unless a payment of $217.36 was made by June 22, 2023. Washington testified she did not know she missed a payment, did not receive a cancellation notice, and did not believe her policy was cancelled. Janeen Copic, an insurance litigation representative at Progressive, averred Washington did not pay the overdue premium and the policy was cancelled at 12:01 a.m. on June 22, 2023. A transaction history log indicated a "[f]inal [c]ancel" was entered on June 23, 2023.

On July 6, 2023, Washington was involved in an automobile accident as a passenger and sustained injuries to her back, shoulder, ribs, and neck. A final bill was mailed to Washington on July 13, 2023, stating Washington lost coverage on June 22, 2023. Washington testified she did not receive the final bill. On July 13 and 14, 2023, Washington accessed her Progressive account online. At 12:40 a.m. on July 14, 2023, Washington electronically signed a statement of no loss, in which she verified four statements. In three of the statements, Washington verified that, between 12:01 a.m. on June 22, 2023 and the date and time she signed the document, there was "no damage to or theft of any of the vehicles," no household member was "involved in any motor vehicle accidents," and "no one operating a vehicle listed on [the] policy has been involved in an accident." Washington verified "that, if [the] policy is reinstated, Progressive will not cover any accidents or damages between June 22, 2023 and the date and time [Washington] signed this document." Washington testified she never signed the statement of no loss nor made a payment on July 14, 2023. Copic averred Washington's policy was reinstated at about 12:42 a.m. on July 14, 2023, after the premium was paid. The transaction history log and customer interaction history logs showed a payment of $217.36 and a "[r]einstatement" on July 14, 2023.

After the accident, Washington was treated by Mustafa Shukr, M.D., and his assistant, Tarick Salamey, for low back pain at MPM. MPM's treatment included a neurostimulation device (also known as "the Soleve") produced by Nervomatrix that measures skin impedance using trigger point impedance imaging (TPII) to target myofascial trigger points and provide transcutaneous electrical nerve stimulation (TENS) treatment (hereinafter, "the treatment" or "the Nervomatrix machine"). The treatment is intended "for back pain relief" and patients with trigger points. Washington received four treatments between November 2023 and January 2024. Each treatment lasted 10 to 15 minutes and involved different amounts of "treatment points." Washington stated the treatment "locate[d]" nerve damage in her back and pinched or shocked the nerve to alleviate pain. A technician at Michigan Management calibrated the frequency on the Nervomatrix machine and sent the results to Dr. Shukr. Washington stated it was "hard" to discern whether the treatment helped and ceased the treatment because of her epilepsy. Washington received urine drug testing at Laboratory Specialists on eight separate occasions after the accident. On February 15, 2024, Washington assigned her rights to enforce the payment of charges incurred for medical treatment to plaintiffs.

Plaintiffs filed a complaint seeking PIP benefits. MPM claimed $64,127 in medical expenses and Laboratory Specialists claimed $12,357.10 in medical expenses. Progressive filed four dispositive motions, two of which the trial court ruled on and are subject to this appeal.

Progressive moved for partial summary disposition under MCR 2.116(C)(10) regarding the lack of efficacy of the Nervomatrix treatments provided by MPM to Washington to treat alleged

-2-

back pain caused by the accident. Progressive argued the Nervomatrix treatments were not reimbursable under MCL 500.3107 because there was no objective medical proof of its efficacy under *Krohn v Home-Owners Ins Co*, 490 Mich 145; 802 NW2d 281 (2011). Instead, Progressive contended the treatments were experimental and not reasonably necessary for Washington's care, recovery, or rehabilitation, as Dr. Shukr's testimony failed to show the treatment was anything more than a placebo, and scientific studies regarding the treatment were insufficient to establish even a genuine issue of fact regarding efficacy. Plaintiffs opposed the motion, arguing that, although the treatment was new, there was a genuine issue of fact regarding its objective efficacy. Plaintiffs asserted the treatment was approved by the United States Food and Drug Administration (FDA), and several articles and studies supported the treatment was efficacious.

Having dispensed with oral argument, the trial court issued an opinion and order granting the motion for partial summary disposition. The trial court stated plaintiffs did not meet the burden of proving that "the device is efficacious in its intended use to treat back pain caused by a motor vehicle accident" under *Krohn*. The trial court noted any testimony from Dr. Shukr was inadmissible under MRE 702. The trial court concluded:

> . . . Progressive has presented evidence, in the form of a medical journal article summarizing a study funded by the device's manufacturer, to establish that Nervomatrix is no better than a placebo for treatment of lower back pain. [MPM] has not presented evidence to establish that the Nervomatrix treatment was reasonably necessary for Ms. Washington's care, recovery, or rehabilitation as required by MCL 500.3107(l)(a) as interpreted by the Supreme Court in *Krohn*. . . .

> The *Krohn* Court concluded that whether a service is reasonably necessary must be determined under an objective standard. 490 Mich at 159-160. [Dr. Shukr's] testimony is insufficient to create a question of fact . . . .

> Furthermore, in its response, [MPM] argues the Nervomatrix treatment is an approved device by the FDA . . . . However, there is nothing in the 510(k) letter that proves the Nervomatrix device is safe and effective . . . . The Supreme Court in [*Medtronic, Inc v Lohr*, 518 US 470; 116 S Ct 2240; 135 L Ed 2d 700 (1996),] found that the 510(k) process only focuses on the medical device's equivalence to another device, not the device's safety and effectiveness. *Id*. at 471.

Progressive later moved for summary disposition under MCR 2.116(C)(10), contending that Washington lacked any automobile insurance coverage on the date of the accident. Progressive asserted it cancelled Washington's policy before the accident for nonpayment of a premium and, after the accident, Washington acknowledged she was not covered by Progressive. Plaintiffs opposed the motion, asserting Progressive did not prove with admissible evidence that the policy was cancelled and that Washington never received a cancellation notice.

The trial court issued an opinion and order granting Progressive's motion for summary disposition under MCR 2.116(C)(10), concluding that plaintiffs were not entitled to PIP benefits because Washington did not have automobile insurance coverage on the date of the accident. The trial court explained the evidence established Progressive sent the notice of cancellation in the mail and, under the policy, "receipt of the notice is not required for cancellation," citing to *Nowell v*

*Titan Ins Co*, 466 Mich 478, 482-483; 648 NW2d 157 (2002). The trial court found there was no factual dispute that Progressive mailed the notice of cancellation through the United States Postal Service on June 8, 2023, and that Washington "acknowledged . . . she did not have coverage on the date of her accident when she signed the 'Statement of no loss' when she reinstated her policy."

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). The trial court granted both of Progressive's motions for summary disposition under MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160.

> [A] trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (quotation marks and citations omitted).]

"The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact[.]" *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001) (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court." *Miller Estate v Angels' Place, Inc*, 334 Mich App 325, 330; 964 NW2d 839 (2020).

"Statutory interpretation is a question of law, which this Court also reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010). "This Court reviews de novo issues of contractual interpretation. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Tripp v Baker*, 346 Mich App 257, 272-273; 12 NW3d 45 (2023) (quotation marks and citations omitted). "An insurance policy is subject to the same contract construction principles that apply to any other species of contract." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019) (quotation marks and citation omitted).

### B. MOTION FOR SUMMARY DISPOSITION REGARDING COVERAGE

Plaintiffs contend the trial court erred by granting the motion for summary disposition regarding coverage because Progressive did not cancel the policy before the accident and, even if there was admissible evidence supporting cancellation, there exists a genuine issue of material fact whether the cancellation was effective.

"The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) (alteration in original; quotation marks and citation omitted). "When interpreting an insurance policy, [t]he policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, because the parties are presumed to have contracted with the intention of executing a policy that complies with the related statutes." *Yang v Everest Nat'l Ins Co*, 507 Mich 314, 321; 968 NW2d 390 (2021) (alteration in original; quotation marks and citations omitted). "When interpreting a statute, courts must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Id*. at 322 (quotation marks and citation omitted).

MCL 500.2123 governs termination of insurance and related notice requirements, providing, in pertinent part:

(1) Except as provided in subsection (2) or (3), a termination of insurance shall not be effective unless the insurer, at least 30 days prior to the date of termination, delivers or mails to the named insured at the person's last known address a written notice of the termination. The notice shall state the effective date of termination and each specific reason for the termination.

(2) A notice of termination mailed or delivered within the first 55 days after the initial issuance of a policy may be made effective not less than 20 days after the date of mailing or delivery of the notice.

(3) A notice of termination for nonpayment of premium shall be effective as provided in the policy.

(4) A termination of insurance shall not be effective unless the termination is due to reasons which conform to the underwriting rules of the insurer for that insurance.

MCL 500.3020 governs cancellation of a policy and states, in relevant part:

(1) A policy of casualty insurance . . . shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:

* * *

(b) Except as otherwise provided in subdivision (d), that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

The objective of MCL 500.3020(1)(b)

is to make certain that all of those who are insured under a policy are afforded a period of time, ten days, either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. [*Yang*, 507 Mich at 326 n 5 (quotation marks and citation omitted).]

"Notice of cancellation" is undefined by statute, but a notice of cancellation must be "peremptory, explicit, and unconditional." *Id*. at 325-326. Cancellation is impermissible when an insurance company "mails its customer a letter purporting to be a notice of cancellation for nonpayment of insurance premiums before any nonpayment actually occurred." *Id*. at 317. "[A]ctual notice or receipt of a notice of cancellation under MCL 500.3020 is unnecessary for the notice to become effective. However, the notice must be mailed so as to be reasonably calculated to arrive at the appropriate address at least ten days before the cancellation date." *Nowell*, 466 Mich at 488. "Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *Yoches v Dearborn*, 320 Mich App 461, 480; 904 NW2d 887 (2017) (quotation marks and citation omitted). "This rule bars the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement." *Yerkovich v AAA*, 461 Mich 732, 741; 610 NW2d 542 (2000).

Progressive's policy allowed cancellation during the policy period under certain circumstances. The cancellation provision states in relevant part:

> **We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

> **We** will give at least 10 days['] notice of cancellation if the policy is cancelled for nonpayment of premium. If **we** cancel this policy for any reason other than nonpayment of premium within the first 55 days following the initial issuance of this policy, notice will be mailed at least 20 days before the effective date of cancellation.

> **We** will give at least 30 days['] notice of cancellation in all other cases.

> **We** may cancel this policy for any reason if the notice is mailed within the first 55 days of the initial policy period.

> After this policy is in effect for more than 55 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:

> 1. nonpayment of premium;

> \* \* \*

> Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither

severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

The record established no material factual dispute that the policy was cancelled by Progressive before the accident, there was no coverage at the time of the accident, and the policy was not reinstated until after the accident. Before the accident, Washington obtained the policy for PIP benefits from April 5, 2023 until October 5, 2023. Washington paid her first and second monthly premiums using a debit card, which she had saved to her online account. The next premium owed was declined on June 5, 2023, because Washington's bank account "declined her automatic credit card premium payment." Washington testified she was not aware the payment was declined.

Plaintiffs correctly note on appeal that the policy required a notice of cancellation for nonpayment of a premium to be mailed 10 days before cancellation. However, plaintiffs' argument that there was no admissible evidence supporting the proof of mailing for the cancellation is meritless. Progressive offered a copy of the cancellation notice, which listed a "[d]ate of [m]ailing" as June 9, 2023. The cancellation notice stated, "we didn't receive your payment and, as a result, your policy will be [cancelled] at 12:01 a.m. on June 22, 2023." To avoid cancellation, Washington was required to pay the $217.36 premium by June 22, 2023. Further, the record included customer interaction history logs and a transaction history log. The customer interaction history log reflected a notice of nonpayment was sent by USPS to Washington on June 8, 2023. Copic averred the cancellation notice was sent on June 9, 2023, that Washington did not timely pay the premium, and that the policy was cancelled at 12:01 a.m. on June 22, 2023. The transaction history log indicates a "[f]inal [c]ancel" was entered on June 23, 2023.

The accident occurred on July 6, 2023, and resulted in Washington sustaining injuries. Progressive sent a final bill to Washington on July 13, 2023, seeking payment of $56.76 and stating Washington "no longer ha[d] insurance with [Progressive], effective June 22, 2023." The transaction history log indicated a "[c]ollection [l]etter" was sent on July 13, 2023.

Copic averred, and the customer interaction history logs reflected, that Washington accessed her Progressive account online on July 13 and 14, 2023. At 12:40 a.m. on July 14, 2023, Washington electronically signed a statement of no loss. The statement of no loss included four conditions, which needed to be verified by Washington to "reinstate [her] policy[.]" The conditions included verification that, "if [the] policy is reinstated, Progressive will not cover any accidents or damages between June 22, 2023 and the date and time [Washington] signed this document." Worth noting, Washington verified that no household members or vehicles were involved in any accidents between 12:01 a.m. on June 22, 2023 and when she signed the document.[1] Washington's policy was reinstated at about 12:42 a.m. on July 14, 2023, after paying her premium.

---

[1] Plaintiffs' argument that Progressive had a preexisting duty to provide coverage on the date of the accident is meritless because the statement of no loss did not modify "an existing contractual relationship" when no coverage was in place when it was signed. See *Yerkovich*, 461 Mich at 741.

Plaintiffs assert that (1) Copic's statements did not establish the notice was mailed to Washington as required under the policy, and (2) Copic did not have personal knowledge of the mailing, and any statement offered to prove the notice was sent was inadmissible hearsay and cannot be considered under MCR 2.116(G)(6). Under MRE 801(c), hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Under MRE 802, "[h]earsay is not admissible unless these rules provide otherwise." Contrary to plaintiffs' assertion, Copic made the statements "with personal knowledge[,]" as she was an insurance litigation representative at Progressive. Nothing suggests that Copic was not qualified to testify about Progressive's business records regarding Washington's account. MRE 803(6). But even assuming Copic's statements were inadmissible, there remained unrebutted evidence that the notice of cancellation was mailed and the policy was cancelled,[2] and the notice of cancellation was entered in the record.

Plaintiffs argue Progressive may not rely on the logs contained in the underwriting file under MCR 2.313(C)(1) and MCR 2.302(A)(1)(d) because Progressive did not raise the issue of cancellation in its initial disclosures or supplementing disclosures and responses, waiting until after discovery was closed to raise the issue, and failed to provide the underwriting file until after discovery was closed. MCR 2.313(C)(1) states:

> If a party fails to provide information or identify a witness as required by MCR 2.302(A) or (E), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

MCR 2.302(A)(1)(d) provides that a party must provide "a copy—or a description by category and location—of all documents, ESI, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Even if the failure to turn over the underwriting file was not substantially justified or harmless, and the underwriting file is not considered, the record included the cancellation notice itself, which lists the date of mailing.

Plaintiffs argue that there was a genuine issue of material fact whether there was a cancellation, and credibility assessments must be resolved by a jury. Specifically, plaintiffs argue there existed a factual dispute because Washington testified that she only received "a hard copy of stuff" in the mail from Progressive after she "first set [the policy] up," and did not receive a cancellation notice. Rather, she discovered the missed payment by accessing the Progressive application on her phone and "didn't think [the policy] was cancelled." Washington maintained that she paid the premium on the application when it was "red," or when she "needed to pay it for it being past due." Washington noted the account application did not indicate the policy was cancelled, and believed her policy was fully paid at the time of the accident. Washington testified she "didn't sign" the statement of no loss or make a payment on July 14, 2023. Washington

---

[2] Moreover, plaintiffs did not include this argument in the statement of questions presented on appeal, and it could be deemed abandoned on appeal. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008); see also MCR 7.212(C)(5).

testified she did not receive the final bill. Finally, Washington maintained the policy was only cancelled in August 2023.

Although the transaction history log indicates a "[c]redit [i]ssue," and there was a "[f]inal [c]ancel" on August, 23, 2023, this was a second cancellation that occurred after the policy was reinstated following the initial cancellation for the first nonpayment of a premium. Even viewing Washington's testimony in the light most favorable to plaintiffs, it fails to establish a genuine issue of material fact whether the July notice of cancellation was mailed. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). Washington's assertion that she never received the mailing did not rebut the proof of mailing itself. Any contention that Washington's testimony supports that the mail was not sent is mere speculation. See *Karbel*, 247 Mich App at 97.

C. MOTION FOR PARTIAL SUMMARY DISPOSITION REGARDING TREATMENT

Because the policy was cancelled and no coverage existed when the accident occurred, plaintiffs are not entitled to PIP benefits for treatment provided to Washington. Thus, we need not resolve whether plaintiffs produced evidence establishing that the treatment provided Washington with "an objectively verifiable chance that it would be efficacious" to her "care, recovery, or rehabilitation." *Krohn*, 490 Mich at 167-168.

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado